**FILED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SEP 2 5 2002

~~NANCY MAYER WHITTINGTON, CLERK~~
~~U.S. DISTRICT COURT~~

AMERICAN BAR ASSOCIATION )
750 North Lake Shore Drive )
Chicago, Illinois 60611 )
)
)
Plaintiff, )

v.

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

Defendant. )
)

CASE NUMBER 1:02CV01883

JUDGE: Reggie B. Walton

DECK TYPE: Administrative Agency Review

DATE STAMP: 09/25/2002

## COMPLAINT FOR DECLARATORY RELIEF

### PRELIMINARY STATEMENT

1.     This action is brought by the American Bar Association ("ABA" or "Bar") on

behalf of its more than 410,000 members to declare unlawful the Federal Trade Commission's

application of the privacy provisions in Title V of the Gramm-Leach-Bliley Act, 15 U.S.C. §

6801 *et seq.* (Supp. 2002) ("GLBA" or the "Act"), to certain members of the Bar acting in their

capacities as practicing lawyers, each of whom is already subject to strict confidentiality and

privacy requirements set forth in the statutes, codes of professional responsibility, and

disciplinary rules of the various states in which Bar members are licensed to practice law.

### PARTIES

2.     Plaintiff ABA is the world's largest voluntary professional association with more

than 400,000 members. ABA's mission is to be the national representative of the legal

profession, serving the public and the profession by promoting justice, professional excellence and respect for the law.  Among ABA's goals are:  promoting improvements in the American system of justice;  increasing public understanding of and respect for the law, the legal process, and the role of the legal profession; achieving the highest standards of professionalism, competence and ethical conduct for lawyers;  and advancing the rule of law worldwide.  To assist the legal profession in achieving and maintaining high standards for professionalism and ethical conduct, the ABA promulgates Model Rules of Professional Conduct, one of which protects the confidentiality and privacy of information disclosed by and to clients.  Many states base their attorney confidentiality and privacy rules on the ABA's Model Rules.

3.    Defendant Federal Trade Commission ("FTC") is an independent agency of the United States.  It is one of several entities Congress authorized to enforce the privacy provisions of the GLBA, and has, moreover, taken the position that it is authorized to enforce the GLBA against lawyers engaged in the practice of law because lawyers purportedly fall within the category of "financial institutions" not otherwise supervised by federal financial regulatory agencies. *See* 15 U.S.C. § 6805(a)(7).

4.    Congress has also granted to the FTC the responsibilities of conducting rulemaking proceedings under the GLBA, granting exceptions under the GLBA where consistent with the statute's privacy purposes, and bringing enforcement actions against certain noncompliant "financial institutions" not otherwise supervised by federal financial regulatory agencies.  15 U.S.C. §§ 6804, 6805.

## JURISDICTION AND VENUE

5.    This Court has Federal Question jurisdiction of this action pursuant to 28 U.S.C. § 1331 (1993), because this action arises under the Title V privacy provisions of the GLBA, 15

U.S.C. §§ 6801 *et seq.*, and the rules and regulations promoted thereunder, including 16 C.F.R. §§ 313 *et seq.* (2002).

6.     Venue is proper in this district under 28 U.S.C. § 1391(e) because the FTC is an agency of the United States, its headquarters are located in the District of Columbia, and a substantial part of the events and omissions giving rise to the claims in this action occurred or failed to occur at the FTC's headquarters.

7.     This Court is authorized to award declaratory relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## THE GLBA DOES NOT COVER LAWYERS ENGAGED
## IN THE PRACTICE OF LAW

8.     The GLBA was enacted to "enhance competition in the financial services industry by providing a prudential framework for the affiliation of banks, securities firms, insurance companies, and other financial service providers." H.R. Conf. Rep. No. 106-434, at 151 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245. While making affiliation possible, however, the Act requires these institutions to respect the privacy of their customers by informing them of their policies concerning the sale or sharing of customers' information, and in some cases limiting the ability of these institutions to share certain customer information with third parties. 15 U.S.C. § 6801 *et seq.*

9.     The purpose of the provisions at issue in this case, Subtitle A of Title V of the Act, entitled "Disclosure of Nonpublic Personal Information," is to effectuate the explicitly articulated policy of Congress that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). To this end, the

GLBA's privacy provisions require a "financial institution," as that term is defined in the Act, to notify all of its customers of the institution's privacy policies and practices as they relate to the sharing of customer information with affiliates of the institution and nonaffiliated third parties. *See* 15 U.S.C. § 6803.

10.    In addition, the GLBA imposes limitations on how, when, and under what circumstances a "financial institution" may disclose to a third party any "nonpublic personal information" of a "consumer." Specifically, for example, a "financial institution" may not disclose a consumer's nonpublic personal information to an unaffiliated third party unless the consumer has first been given the notice described above, and the consumer fails to "opt-out" using the procedure provided in regulations promulgated under the GLBA. *See* 15 U.S.C. § 6802.

11.    The term "financial institution" triggers coverage of the GLBA and is therefore jurisdictional. "Financial institution" is defined in relevant part by the GLBA as "any institution the business of which is engaging in financial activities as described in section 1843(k) of [U.S.C.] Title 12." 15 U.S.C. § 6809(3)(A). Section 1843(k) of Title 12, which is the codification of Section 4(k) of the Bank Holding Company Act of 1956, describes several "activities that are financial in nature" including those also described in a Federal Reserve Board regulation identifying activities "closely related to banking," commonly referred to as Regulation Y. *See* 12 U.S.C. § 1843(k)(4) and 12 C.F.R. §§ 225.28(b) (a provision of Federal Reserve Board "Regulation Y").

12.    The jurisdictional term "financial institution" in the GLBA, which is further defined by the activities enumerated in Section 4(k) of the Bank Holding Company Act and Regulation Y, clearly includes banks; savings associations; credit unions; lenders such as credit

card companies; credit bureaus; financial, investment, and economic advisory services; entities

that provide real estate settlement services; and tax planning and return preparation services.

There is no mention, however, anywhere in the GLBA, Section 4(k) of the Bank Holding

Company Act or Regulation Y, of legal services or that lawyers engaged in the practice of law

might fall within the definition of "financial institution."

13.     The text, purpose and legislative history of the GLBA all point to the conclusion

that lawyers engaged in the practice of law are not covered by the GLBA and that Congress did

not intend to cover lawyers.  Furthermore, Congress did not in the GLBA confer authority on the

FTC to regulate the confidentiality, privacy and security of information disclosed by clients to

their attorneys.

<h2 style="text-align:center">THE FTC RULEMAKING DID NOT MENTION LAWYERS</h2>

14.     Several federal banking agencies and other agencies, including the FTC, are

authorized by the GLBA to promulgate regulations necessary to carry out the purposes of the Act

in accordance with the notice-and-comment and other rulemaking provisions of the

Administrative Procedure Act.  15 U.S.C. § 6804.  Congress did not, however, delegate authority

to any of the agencies, including the FTC, to issue opinion letters having the force of law.

15.     Pursuant to its authority to promulgate formal rules to implement the GLBA, the

FTC published a notice of proposed rulemaking in the *Federal Register* on March 1, 2000.  *See*

Privacy of Consumer Financial Information, 65 Fed. Reg. 11,174 (proposed Mar. 1, 2000).

After considering public comments, the FTC issued its final rule on May 24, 2000 and it became

effective on July 1, 2001.  *See* 16 C.F.R. § 313.18.

16.     The FTC rulemaking proceeding, and the rule promulgated as a result, discuss in

considerable detail the various types of entities that do and do not qualify as "financial

institutions" covered by GLBA.  *See, e.g.*, 16 C.F.R. § 313.3(k) (describing entities and activities

- 5 -

that are covered by the Act, as well as entities that "are not significantly engaged in financial

activities" and are thus not covered under the Act). There is no mention anywhere in the

rulemaking or the final rule, of legal services or that lawyers engaged in the practice of law

might be regarded as "financial institutions" covered by the GLBA.

17.    In its final rule, the FTC decided to exempt institutions of higher education from

GLBA's requirements by deeming such institutions to be in compliance with GLBA if the

institutions also comply with the Federal Educational Rights and Privacy Act, 20 U.S.C. §

1232g. Like the statutes and regulations in the 50 states and the District of Columbia which

protect the privacy of information disclosed by clients to their attorneys, the Federal Education

Rights and Privacy Act provides a separate statutory and regulatory framework for protecting the

privacy of students. 16 C.F.R. § 313.1(b).

## THE FTC OPINION LETTER PROVIDES NO EXPLANATION OR REASONING

18.    After the final rule was promulgated by FTC, it was widely reported in the press

that the FTC and its enforcement staff had affirmatively decided that attorneys were "financial

institutions" and therefore covered by GLBA. *See, e.g.*, Center for Regulatory Effectiveness,

"FTC Determines Attorneys to be Subject to Notice Requirements of Gramm-Leach-Bliley Act"

(reprinting Feb. 23, 2001 letter to FTC from Boston Bar Association) (*found at* http://

www.thecre.com/emerging/).

19.    These press reports prompted a number of inquiries and objections by bar

associations from across the nation. On June 8, 2001, the ABA Board of Governors passed a

resolution recommending that practicing attorneys not be subject to GLBA's notice provisions

and that the ABA take action to exclude the practice of law from coverage of the Act. This

resolution was transmitted to FTC Chairman Timothy Muris by letter dated July 2, 2001, along

with a detailed explanation of why regulation of the legal profession under a banking statute

would be inconsistent with the intent of Congress in passing the GLBA. By letter dated July 10,

2001 to FTC Chairman Muris, as supplemented by an August 22, 2001 letter to FTC Bureau of

Consumer Protection Director J. Howard Beales, the ABA requested the FTC to exempt lawyers

and law firms from GLBA's privacy provisions. An ABA working group met with several FTC

representatives during the summer of 2001. Additional meetings were held with Director Beales

on February 15, 2002 and with four of the five FTC Commissioners in March 2002. The ABA,

as well as state bar associations, argued that Congress never intended that attorneys engaged in

the practice of law be covered by the GLBA privacy provisions, and alternatively, that attorneys

should be exempted from, or deemed to be in compliance with, the GLBA because the ethical

strictures of every state jurisdiction already require attorneys to protect the privacy and

confidentiality of client information.

        20.    By letter dated April 8, 2002, the Director of the Bureau of Consumer Protection

of the FTC provided a final response to the ABA's request. Without even mentioning the serious

statutory construction and Congressional intent issues or articulating its reasons, the FTC simply

assumed that lawyers engaged in the practice of law were "financial institutions" within the

meaning of the GLBA. In this opinion letter, the FTC made a critical decision concerning the

scope of its own jurisdiction and concluded that Congress had authorized it to step in and

regulate the confidentiality, privacy and security of information provided by clients to their

attorneys. In addition, the FTC suggested in its letter that it lacked legal authority to exempt

lawyers from the Act and it did not mention, much less address, the fact that lawyers are already

subject to privacy and confidentiality statutes and regulations in every state. The FTC provided

no explanation or reasoning for its opinion that lawyers practicing law are covered by the GLBA and should not be exempted.

21.    The FTC letter of April 8, 2002 constitutes final agency action.

22.    The FTC letter of April 8, 2002 signals the agency's enforcement intentions regarding lawyers but it lacks the force of law.

23.    The FTC has no expertise and no experience with respect to regulation of the confidentiality, privacy and security of information provided by clients to their attorneys.

### STATES HAVE ALWAYS REGULATED ATTORNEY-CLIENT CONFIDENTIALITY AND PRIVACY

24.    Historically, the laws of the states have governed confidentiality, privacy and security of the information disclosed by clients to their attorneys. Most states base their confidentiality rules on the ABA's Model Rule of Professional Conduct ("ABA Model Rules") 1.6(a), which provides that "a lawyer shall not reveal information relating to the representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation." A few states based their confidentiality rules on a prior set of ABA-recommended ethics rules, the ABA Model Code of Professional Responsibility, in which the Disciplinary Rules set forth under Canon 5 of that Code contain essentially similar rules on confidentiality and disclosure. States, such as California, whose rules are not based on ABA Model Rule 1.6 or the Rules under Canon 5 of the Model Code of Professional Responsibility, nonetheless have strictures in place that prohibit attorneys from revealing "confidences" or "secrets," generally subject to the same limited categories of exceptions provided for in ABA Model Rule 1.6(a). *See* Cal. Bus. & Prof. Code § 6068(e) (West 1990) ("It is the duty of an attorney to . . . maintain inviolate the confidences, and at every peril to himself or herself to preserve the secrets, of his or her client").

25.     As a consequence of the existence and enforcement of statutes and rules in every state protecting the privacy and confidentiality of information disclosed by clients to their attorneys, the application of the GLBA to attorneys engaged in the practice of law would add nothing to the accomplishment of the goals of the GLBA, which are expressly stated in 15 U.S.C. § 6801(a) of the Act.

### HARM TO THE BAR

26.     Application of the GLBA to attorneys would be unreasonably costly and time-consuming, particularly for small firms and solo practitioners who lack the infrastructure and staffing necessary to mail privacy notices to their clients.  The Act's notice provisions are clearly geared toward large, highly automated financial institutions, not small law practices.  In addition, since it is commonly understood that attorneys already have a sacred duty to guard and preserve all client confidences -- a duty guaranteed by 200 years of state regulation -- application of the more permissive provisions of the GLBA to attorneys can only result in confusion and misunderstanding on the part of clients, thus undermining trust and confidence in the legal profession.

27.     On the other hand, noncompliance with the GLBA will expose attorneys to investigations and possible enforcement actions by the FTC.

28.     As a consequence, the ABA's membership as well as thousands of other attorneys engaged in the practice of law will suffer immediate, severe and irreparable harm.

### CLAIMS FOR RELIEF

29.     The FTC's decision that attorneys engaged in the practice of law are covered by the GLBA is in excess of the agency's statutory authority and is therefore unlawful.

30.     The FTC's decision that attorneys engaged in the practice of law are covered by the GLBA constitutes arbitrary and capricious agency action, is an abuse of discretion and is otherwise not in accordance with law.

31.     The FTC's refusal to exempt attorneys engaged in the practice of law from the GLBA constitutes arbitrary and capricious agency action, is an abuse of discretion and is otherwise not in accordance with law.

32.     There exists an actual controversy between plaintiff ABA and defendant FTC.  By virtue of the foregoing, the ABA is entitled to a judgment declaring that the FTC's actions are beyond the agency's authority, are arbitrary and capricious, and are therefore unlawful.

### RELIEF REQUESTED

WHEREFORE, Plaintiff ABA, on behalf of its members, respectfully prays for entry of an order declaring that:

(a)     Congress did not in the GLBA confer authority on the FTC to regulate the confidentiality, privacy and security of information disclosed by clients to their attorneys;

(b)     The FTC's decision that attorneys engaged in the practice of law are covered by the GLBA is unlawful and hereby set aside;

(c)     The ABA is entitled to such other and further relief as the Court deems just and proper.

Date:    September 25, 2002

STEPTOE & JOHNSON LLP

David L. Roll (D.C. Bar No. 188763)
Robert E. Jordan, III (D.C. Bar No. 15784)
Rhonda M. Bolton (D.C. Bar No. 455005)
1330 Connecticut Avenue, NW
Washington, D.C.  20036
(202) 429-3000
(202) 429-3902 (fax)

Darryl L. DePriest
General Counsel
American Bar Association
541 North Fairbanks Court
14th Floor
Chicago, Illinois 60611
(312) 988-5215

Attorneys for Plaintiff American Bar Association