## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN BAR ASSOCIATION** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 1:02CV01883 (RBW)** |
| ) | |
| **FEDERAL TRADE COMMISSION** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant, Federal Trade Commission ("FTC"), by its undersigned counsel, hereby moves for an order granting defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The claims of plaintiff American Bar Association for declaratory, injunctive, and other relief, should be dismissed in their entirety, with prejudice. In support of its motion to dismiss, the FTC respectfully refers this Court to its Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss for Failure to State a Claim upon Which Relief Can be Granted Pursuant to Fed. R. Civ. P. 12(b)(6).

A proposed Order is filed herewith.

Respectfully submitted,

_____/s/_____
ROSCOE C. HOWARD, JR.
D.C. Bar No. 246470
United States Attorney

_____/s/_____
MARK E. NAGLE
D.C. Bar No. 416364
Assistant United States Attorney

_____/s/_____
BRIAN J. SONFIELD
D.C. Bar No. 449098
Assistant United States Attorney
Judiciary Center Bldg., Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7143


JOHN F. DALY
D.C. Bar No. 250217
Deputy General Counsel for Litigation

MICHAEL D. BERGMAN
D.C. Bar. 437994
Attorney
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C.  20580
(202) 326-3184
Fax: (202) 326-2477

December 9, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                  |   |                          |
|----------------------------------|---|--------------------------|
| **AMERICAN BAR ASSOCIATION**     | ) |                          |
|                                  | ) |                          |
| **Plaintiff,**                   | ) |                          |
|                                  | ) |                          |
| **v.**                           | ) | No. 1:02CV01883 (RBW)    |
|                                  | ) |                          |
| **FEDERAL TRADE COMMISSION**     | ) |                          |
|                                  | ) |                          |
| **Defendant.**                   | ) |                          |

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)

Title V of the Gramm-Leach-Bliley Act ("GLBA" or "Act"), 15 U.S.C. §§ 6801, et seq., protects the privacy of consumers' nonpublic personal information that is obtained by financial institutions. The Federal Trade Commission ("Commission" or "FTC") – along with several other federal agencies – followed the statutory mandate and issued rules to implement the broad protections in the Act. In its complaint, plaintiff American Bar Association ("ABA") asserts that the Commission wrongfully interpreted the Act to cover lawyers and wrongfully denied its request to grant an exception to lawyers from their GLBA obligations. However, plaintiff fails to set forth a claim for relief because: 1) certain lawyers are expressly subject to the Act; and 2) the Commission's limited exemption authority does not extend to the sort of blanket exemption that plaintiff has requested. Thus, as a matter of law, plaintiff's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**BACKGROUND**

1. The Gramm-Leach-Bliley Act

_____The Gramm-Leach-Bliley Act, Pub. L. No. 106-102, 113 Stat. 1338, was enacted to permit

the affiliation of banks, securities firms, insurance companies and other financial institutions with

each other. *See* H.R. Conf. Rep. No. 106-434 at 1, 151 (1999), *reprinted in* 1999 U.S.C.C.A.N.

245-46. At the same time, Congress imposed broad privacy protections to provide consumers

with control over their personal information provided to financial institutions. 15 U.S.C. §§ 6801-

6809. Congress recognized that the Act's privacy provisions "represent the most comprehensive

federal privacy protections ever enacted by Congress." 145 Cong. Rep. H11,544 (daily ed. Nov. 4,

1999) (Rep. Sandlin); *see also id.* at H11,540 (Rep. Vento); *id*. at H11,546 (Rep. Bereuter).

The Act imposes on each financial institution "an affirmative and continuing obligation to

respect the privacy of its customers and to protect the security and confidentiality of those

customers' nonpublic personal information." 15 U.S.C. § 6801(a). Nonpublic personal

information ("NPI") is defined, *inter alia*, as any "personally identifiable financial information"

("PIFI") that a financial institution obtains about a consumer (except that which the financial

institution has a reasonable basis to believe is publicly available). 15 U.S.C. § 6809(4).

Further, the term "financial institution" is defined broadly as "any institution the business

of which is engaging in financial activities as described in section 1843(k) of Title 12 [section

4(k) of the Bank Holding Company Act of 1956 ("BHCA")]." 15 U.S.C. § 6809(3)(A). Section

4(k)(4) of the BHCA, 15 U.S.C. § 1843(k)(4), provides a list of activities that "shall be considered

to be financial in nature," including "[l]ending, exchanging, transferring, investing for others, or

safeguarding money or securities," and "[p]roviding financial, investment, or economic advisory

2

services . . ."  Section 4(k)(4)(F) also deems as "financial in nature," certain activities that the

Board of Governors of the Federal Reserve System ("FRB" or "Federal Reserve Board") has

determined by regulation that is in effect on November 12, 1999 "to be so closely related to

banking or managing or controlling banks as to be a proper incident thereto . . ."  15 U.S.C.

§ 1843(k)(4)(F).  These regulations expressly include, *inter alia*, "[c]ollecting overdue accounts

receivable, either retail or commercial," 12 C.F.R. § 225.28(b)(2)(iv), "[p]roviding real estate

settlement services," 12 C.F.R. § 225.28(b)(2)(viii), and "[p]roviding tax-planning and tax-

preparation services to any person."  12 C.F.R. § 225.28(b)(6)(vi).  Anyone (including lawyers)

engaging in these activities is a "financial institution" under the GLBA.

 Section 502 of the GLBA, 15 U.S.C. § 6802, prohibits a financial institution from

disclosing nonpublic personal information to a nonaffiliated third party unless it has provided its

consumers with notice of its information sharing practices and the opportunity to opt out of

nonaffiliated third party information sharing.  There are a number of statutory exceptions to the

notice and opt-out requirement, including disclosures to service providers for marketing, to

process and service transactions requested or authorized by the consumer, and to comply with

applicable legal requirements.  *See generally* 15 U.S.C. §§ 6802(b)(2), 6802(e).

 Section 503 of the GLBA, 15 U.S.C. § 6803, imposes an independent requirement that

financial institutions provide to all of their customers initial and annual notices of their practices

regarding sharing information with both affiliates and nonaffiliated third parties.[1]  These notices

---

[1] Financial institutions have differing notice and opt-out obligations with respect to two
types of individuals:  "consumers" and "customers."  A "consumer" is any individual (or that
individual's legal representative) who obtains a financial product or service from a financial
institution which is to be used primarily for personal, family, or household purposes.  GLBA

(continued...)

are required even if the financial institution does not share NPI.  The notice must describe the categories of information that are collected and disclosed by the financial institution, the categories of nonaffiliated third persons to whom the NPI may be disclosed, and the policies of the institution regarding protecting the confidentiality and security of its customers' NPI.

The GLBA also provides defendant Federal Trade Commission and other federal agencies authority to issue regulations "as may be necessary to carry out the purposes of" the Act's privacy provisions.[2]  15 U.S.C. § 6804(a).  Further, the Act expressly provides that the privacy regulations "may include such additional exceptions to subsections (a) through (d) of section 6802 of this title as are deemed consistent with the purposes of this subchapter."  15 U.S.C. § 6804(b).  There is no express authority to grant exceptions to the Act's other privacy provisions, such as the Section 503 notice requirement.

---

[1](...continued)
§ 509(9), 15 U.S.C. § 6809(9).  A "customer" is a consumer who has a continuing relationship with the financial institution.  *See* 16 C.F.R. §§ 313.3(h)-(i).  Financial institutions must provide initial and annual notices of their information sharing practices to all of their customers.  In contrast, consumers who do not qualify as "customers" – *i.e.*, individuals who have obtained a product or service but do not have a continuing relationship with the financial institution – must be notified only if the financial institution actually shares nonpublic personal information with nonaffiliated third parties.

[2] The federal agencies responsible for implementing and enforcing the GLBA's privacy provisions are the FTC, the National Credit Union Administration ("NCUA"), the Office of Thrift Supervision ("OTS"), the Office of the Comptroller of the Currency ("OCC"), the Board of Governors of the Federal Reserve System ("FRB"), the Federal Deposit Insurance Corporation ("FDIC"), the Securities and Exchange Commission ("SEC"), and the Commodities Futures Trading Commission ("CFTC") (collectively "other agencies").  As required by the GLBA, the agencies coordinated their rulemaking efforts and issued regulations that were "consistent and comparable" with those of the other agencies.  15 U.S.C. § 6804(a)(2).  *See* 12 C.F.R. pt. 40 (OCC); 12 C.F.R. pt. 216 (FRB); 12 C.F.R. pt. 332 (FDIC); 12 C.F.R. pt. 573 (OTS); 12 C.F.R. pt. 716, 741 (NCUA); 17 C.F.R. pt. 248 (SEC); 17 C.F.R. pt. 160 (CFTC).

2. <u>The GLBA Privacy Rules</u>

On May 24, 2000, the Commission issued a final rule, Privacy of Consumer Financial Information, 16 C.F.R. pt. 313 ("privacy rule"), which implemented Title V, Subtitle A of the GLBA. The GLBA privacy rule describes the content, form, timing, and delivery of privacy and opt-out notices, the conditions under which financial institutions may disclose NPI to nonaffiliated third parties, and the conditions under which the third parties may redisclose and use it. *See* 16 C.F.R. §§ 313.1 through 313.18 (2002). The Commission (and the other agencies) defined PIFI to include essentially all information obtained by a financial institution in providing a financial product or service to an individual primarily for personal, family, or household purposes. *See, e.g.*, 16 C.F.R. §§ 313.3(e)(1), (o)(1).[3] The Commission reiterated the statutory definition of "financial institution" in its privacy rule and added that "[a]n institution that is significantly engaged in financial activities is a financial institution." 16 C.F.R. § 313.3(k)(1). The Commission recognized that the term "financial institution" is defined under the Act "very broadly" and includes various entities not traditionally recognized as financial institutions. *See* 65 Fed. Reg. 33646, 33647-48 (2000).

The privacy rule took effect on November 13, 2000, and full compliance was required on or before July 1, 2001.

3. <u>Petitions for Attorney Exemptions by Bar Associations</u>

During 2001 several bar associations, including plaintiff, objected to the Commission's staff's statements "that attorneys were 'financial institutions' and therefore covered by the GLBA."

---

[3] The agencies' definition of PIFI, as well as other aspects of the agencies' privacy rules, was upheld by the Court of Appeals for this Circuit. *See Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002).

Complaint ¶¶ 18-19.  Plaintiff sent letters and met with Commission representatives "request[ing]

the FTC to exempt lawyers and law firms from GLBA's privacy provisions."  Complaint ¶ 19.

Plaintiff and state bar associations "argued that Congress never intended that attorneys engaged in

the practice of law be covered by the GLBA privacy provisions, and alternatively, that attorneys

should be exempted from, or deemed to be in compliance with, the GLBA because the ethical

strictures of every state jurisdiction already require attorneys to protect the privacy and

confidentiality of client information."  *Id.*  On April 8, 2002, the Director of the Commission's

Bureau of Consumer Protection denied plaintiff's request for an attorney exemption because, *inter*

*alia*, of questions concerning the Commission's "legal authority to exempt lawyers from the Act

 . . ."  Complaint ¶ 20.

## ARGUMENT

### I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Although a court must construe the complaint in the light most favorable to the plaintiff in

ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it "need not accept inferences drawn

by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the

court accept legal conclusions cast in the form of factual allegations."  *Kowal v. MCI*

*Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citation omitted).  *Accord Saunders*

*v. White*, 191 F. Supp. 2d 95, 99 (D.D.C. 2002) ("legal conclusions, deductions or opinions couched

as factual allegations are not given a presumption of truthfulness.") (citations omitted).  "Rule

12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  *Neitzke v.*

*Williams*, 490 U.S. 319, 326 (1989).  A motion under Rule 12(b)(6) is particularly appropriate

where, like here, plaintiff's complaint raises "only a question of law. . . about the legal conclusion to be drawn about the agency action." *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). In its complaint, plaintiff has challenged the Commission's staff's interpretation of the GLBA and its refusal to grant an exemption to lawyers under the Act. As shown below, however, the propriety of the Commission's action turns entirely on straightforward legal issues appropriately disposed of through a motion to dismiss. Even assuming the truth of plaintiff's factual allegations, its complaint must be dismissed as a matter of law.

## II. ATTORNEYS WHO ARE SIGNIFICANTLY ENGAGED IN PROVIDING FINANCIAL SERVICES TO INDIVIDUAL CLIENTS ARE SUBJECT TO THE GLBA's REQUIREMENTS

Plaintiff's bald assertion that Congress did not intend to include lawyers within the definition of "financial institution," *see, e.g.,* Complaint ¶¶ 12, 13, 19, is wholly without merit. The GLBA's broad definition of "financial institution" brings in a wide array of entities under the privacy rule, including many not traditionally considered to be engaged in financial activities. The GLBA expressly defines that term to include "any institution the business of which is engaging in financial activities as described in section 1843(k) of Title 12 [section 4(k) of the BHCA]." 15 U.S.C. § 6809(3)(A). Section 4(k)(4) of the BHCA, 15 U.S.C. § 1843(k)(4), provides a list of activities that "shall be considered to be financial in nature," including "[l]ending, exchanging, transferring, investing for others, or safeguarding money or securities," and "[p]roviding financial, investment, or economic advisory services . . ." The BHCA also includes as "financial in nature," activities that the Federal Reserve Board "has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto . . ." 12 U.S.C. § 1843(k)(4)(F). The FRB promulgated such a regulation in

1997, which explicitly lists certain activities to be "closely related to banking," including, *inter alia*, "[p]roviding real estate settlement services," 12 C.F.R. § 225.28(b)(2)(viii), and "[p]roviding tax-planning and tax-preparation services to any person." 12 C.F.R. § 225.28(b)(6)(vi). There is no statutory or regulatory exception that exempts attorneys from coverage.

*Any* entity significantly engaged in any of these activities is a "financial institution" under the GLBA privacy rule.[4]  As a consequence, many individuals and entities that are not traditional financial institutions are financial institutions under the GLBA.  As the Commission recognized when issuing its privacy rule, the statute's definition of "financial institution" is to be defined "very broadly," and "include[s] not only a number of traditional financial activities specified in section 4(k) [of the BHCA] itself, but also those activities that the Federal Reserve Board has found to be . . . closely related to banking . . . The G-L-B Act clearly covers more than parties in the credit, insurance, or securities industries; rather, an entity is a 'financial institution' if it engages in any activity that the [FRB] has determined to be a 'financial activity.'" 65 Fed. Reg. 33646, 33647 (2000); *see also* 65 Fed. Reg. at 33658.  For example, attorneys are subject to the Act's privacy rules if they are significantly engaged in preparing individual tax returns, conducting residential real estate closings, or providing individual financial planning advice.[5]  Contrary to plaintiff's assertions,

---

[4]  The Commission's rules supplement the GLBA's definition by adding that "[a]n institution that is significantly engaged in financial activities is a financial institution." 16 C.F.R. § 313.3(k)(1).  Thus, entities that engage in such activities only sporadically are not subject to the Act.  *See, e.g.*, 16 C.F.R. § 313.3(k)(4) (providing examples of entities that are not significantly engaged in financial activities, including a merchant that merely provides an occasional "lay away" plan or permits an individual to "run a tab").

[5]  Financial institutions have obligations under the privacy rule only to individuals who obtain financial products or services primarily for personal, family or household purposes. Where the client is not an individual, or is an individual seeking a product or service for a

(continued...)

8

*see* Complaint ¶ 13, nothing in the "text, purpose and legislative history" of the GLBA provides that attorneys that are significantly engaged in providing real estate settlement or tax planning services, or any other listed activity, should be distinguished from other providers of financial services and exempted from the Act, regardless of whether they are also subject to obligations under state ethical or confidentiality rules.  In fact, the Court of Appeals for this Circuit concluded that the Commission permissibly interpreted the Act when it determined that an entity which engaged in activities covered by the FRB regulations "comes within the GLBA's definition of a 'financial institution' and is therefore subject to its rulemaking authority under 15 U.S.C. § 6804(a)(1)."  *Trans Union*, 295 F.3d at 48-49 (credit bureaus).

Not all lawyers are covered by the Act.  Indeed, most lawyers – those not significantly engaged in providing tax preparation, real estate settlements, or other covered activities, or those who provide such services only to corporations or for business purposes – are not subject to the GLBA privacy rules.  However, activities that are listed in the FRB's implementing regulations are, by statutory definition, "financial in nature," 12 U.S.C. § 1843(k)(4), and therefore lawyers who are significantly engaged in those activities are "financial institutions" under the GLBA privacy rules.  These lawyers must comply with the GLBA privacy provisions, including restrictions on sharing their clients' nonpublic personal information and sending initial and annual privacy notices.  15 U.S.C. §§ 6802, 6803.  Even where attorneys are already subject to state bar rules which may, in some respects, provide greater protections to their clients' NPI, the attorneys still must send privacy notices to their clients.

---

[5](...continued)
 business purpose, the privacy rule does not apply.  *See* 16 C.F.R. § 313.1(b).

Further, it is immaterial that the GLBA, the Commission's privacy rule, the BHCA, or its implementing regulation (Regulation Y) did not expressly include "lawyers" within their coverage. *See* Complaint ¶¶ 12, 16.  Section 509(3)(A) of the GLBA does not explicitly list any other specific category of "financial institution," such as "banks," or "insurance companies."  Rather, entities are defined under the GLBA as "financial institutions" if they "engag[e] in financial activities as described in [section 4(k) of the BHCA]."  15 U.S.C. § 6809(3)(A).  The BHCA, in turn, authorizes a list of permissible "activities" for bank holding companies that the FRB "determines (by regulation or order) to be financial in nature or incidental to such financial activity."  12 U.S.C. § 1843(k)(1).  Thus, an entity is subject to the GLBA based on its *activities*, and not on its identity, any professional degrees held, or any formal corporate designation.  Moreover, both Regulation Y and the Commission's privacy rule commentary *expressly* included several activities within their coverage in which lawyers may engage, such as "real estate settlement services," "tax-planning," and "tax-preparation" services.  *See* 12 C.F.R. §§ 225.28(b)(2)(viii), (b)(6)(vi); 65 Fed. Reg. at 33647 n.7.

Thus, plaintiff errs as a matter of law when it complains about "[t]he FTC's decision that attorneys engaged in the practice of law are covered by the GLBA . . ."  Complaint ¶¶ 29, 30.  *Congress* brought lawyers within the Act's coverage, by its plain terms, to the extent that they act as financial institutions to certain individual clients, and did not provide any applicable exception.  Indeed, the GLBA expressly excludes several distinct entities from the GLBA, including the Federal Agricultural Mortgage Corporation and certain secondary market institutions chartered by Congress.  *See* 15 U.S.C. § 6809(3).  Thus, Congress knew how to exclude particular entities from its broad

definition of "financial institution" and failed to do so for attorneys.[6]  Even plaintiff does not assert

that attorneys fall within one of the existing GLBA exceptions.  The ABA's recourse for an attorney

exemption must be made to Congress, not the Commission or this Court.

## III.    THE COMMISSION PROPERLY DECLINED TO GRANT AN ATTORNEY EXEMPTION FROM THE GLBA's REQUIREMENTS

In addition to arguing that Congress did not intend to include attorneys as "financial

institutions" under the GLBA, the ABA also urges that attorneys should be administratively

exempted from the Act's requirements, and that the Commission acted arbitrarily and capriciously in

declining to grant such an exemption.  *See, e.g.,* Complaint ¶ 31.  This aspect of the ABA's argument

amounts to a challenge to the Commission's decision not to engage in rulemaking for the purpose of

granting such an exemption.  Such decisions are highly discretionary and the scope of judicial review

is very narrow.  *See infra* at 23.  Here, the Commission's actions were plainly proper, especially in

light of the statutory scheme and its limited exemption authority.

The GLBA's primary grant of exemption authority is contained in Section 504(b), 15 U.S.C.

§ 6804(b), which expressly gives the agencies the authority to grant "exceptions to subsections (a)

through (d) of section 502 . . . ."  Any such exceptions would be in addition to those already provided

by Congress in Section 502(e), 15 U.S.C. § 6802(e).  Thus, the Commission is empowered, to the

extent it "deem[s] [it] consistent with the purposes" of the privacy provisions of the Act, to grant

exemptions from the disclosure and use restrictions set forth in those subsections.  Section 504(b)'s

carefully delineated exemption authority does not, however, empower the Commission to grant

---

[6]  A bill was introduced in the last Congress to exempt attorneys from the Act's definition of "financial institution," but no action was taken on that proposal.  *See Judicial Code of Conduct Privacy Clarification Act*, H.R. 5457, 107th Cong. (2002).

11

exemptions from other requirements of the GLBA, such as the notice requirements set forth in

Section 503.  Section 502 prohibits the disclosure of nonpublic personal information of any

consumer to nonaffiliated third parties unless certain notices are first provided to the consumer; the

consumer must be given a privacy policy notice that complies with the requirements of Section 503,

and a notice of her right to opt out.  Section 503 imposes the independent obligation on financial

institutions to provide initial and annual privacy policy notices to those consumers who establish a

"customer" relationship with the institution –  regardless of its information-sharing practices – and

specifies the content and timing of those notices.  Thus, Section 502 restricts consumer information

sharing and is triggered by that sharing, whereas Section 503 imposes separate privacy notice

obligations that are triggered by a "customer relationship" with a financial institution.  Although

Sections 502 and 503 cross-reference each other, they set forth distinct requirements.  Congress

drafted the exemption authority of Section 504(b) with precision, granting such authority with

respect to four listed subsections of Section 502, but *not* with respect to Section 503 or other

provisions of the Act.

Accordingly, Section 504(b) cannot supply authority for the exemption that the ABA and

other bar associations have sought, and no other statutory provision expressly authorizes such an

exemption.  Whether or not exempting lawyers from the GLBA obligations would be good *policy* is

irrelevant where the Commission lacks the statutory authority to grant such an exemption.  *See, e.g.*,

*Lee v. Gallup Auto Sales, Inc.*, 135 F.3d 1359, 1361-62 (10th Cir. 1998) (statute did not authorize

agency to issue rule exempting transfers of vehicles ten or more years old from statute's odometer

disclosure requirements); *Diersen v. Chicago Car Exch.*, 110 F.3d 481, 485-86 (7th Cir. 1997)

(same); *Orca Bay Seafoods v. Northwest Truck Sales, Inc.,* 32 F.3d 433, 434-36 (9th Cir. 1994)

(agency lacked statutory authority to exempt large trucks from odometer disclosure requirements).
An agency or court may not substitute its own approach to attain the statutory goals if different than
the course laid out by Congress.[7]

Where a statute provides express, but limited, exception authority, the implementing agency
generally may not expand on this exemption authority or grant additional exemptions regardless of
how reasonable it views the additional exception.  *See, e.g., Public Citizen v. FTC*, 869 F.2d 1541,
1556-57 (D.C. Cir. 1989) (Commission lacked authority to exempt utilitarian items used for
promotional purposes from warning labels mandated by the Comprehensive Smokeless Tobacco
Health Education Act which contained one express exception); *Kokechik Fishermen's Ass'n, v. Sec.
of Commerce*, 839 F.2d 795, 802 (D.C. Cir. 1988) (agency was without authority to create general
"negligible impact" exception where statute provided narrow express exemptions); *Natural
Resources Defense Council, Inc. v. Costle*, 568 F.2d 1369, 1374-77 (D.C. Cir. 1977) (EPA does not
have authority to exempt categories of point source discharges from general prohibition against
pollutants beyond that permitted by statutory permitting requirements); *Kimberlin v. U.S. Dept. of*

---

[7] *See, e.g., MCI Telecomm. v. American Tel. & Tel. Co.*, 512 U.S. 218, 231 n. 4 (1994)
(holding that agency's exemption from tariff filing requirement exceeded its statutory authority
and that the court and the agency "are bound, not only by the ultimate purposes Congress has
selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those
purposes"); *Arent v. Shalala*, 70 F.3d 610, 620 (D.C. Cir. 1995) (Wald, J., concurring) (noting
that the court may invalidate agency decision as inconsistent with its statutory mandate, even
though decision was not arbitrary, where it "believe[s] the agency's course of action to be the
most appropriate and effective means of achieving a goal, but determine[s] that Congress has
selected a different-- albeit, in [the court's] eyes, less propitious--path."); *Beverly Enterprises,
Inc. v. Herman*, 119 F. Supp. 2d 1, 11 (D.D.C. 2000) ("it is not the province of this Court to
authorize substitution of a potentially more effective method where Congress has clearly
provided for one in the statute.").

*Justice,* 150 F. Supp. 2d 36, 48-50 (D.D.C. 2001) (agency cannot create exception to statutory scheme where statute unambiguously prohibits certain conduct).

Instead of petitioning the Commission, plaintiff's request for an exemption from the GLBA notice requirements is better addressed to Congress, "where the public interest may be considered from the multifaceted points of view of the representational process." *Federal Power Comm'n v. Texaco Inc.* 417 U.S. 380, 394, 400 (1974) (FPC does not have authority to exempt rates of small producers from regulation under the Natural Gas Act). As the *Diersen* court noted, "[t]here may be good policy reasons for [the requested exemption], but that determination is legislative in nature and is properly made by Congress, and not by regulatory fiat." 110 F.3d at 487 (footnote omitted). *See also Kokechik*, 839 F.2d at 802 ("If the Secretary believes the Act needs amendment, then it is Congress he must address.").

Since the Commission thus lacks express authority to grant exemptions to Section 503's notice requirements, granting the attorney exemption that the ABA seeks would have to be based on residual exemption authority found elsewhere in the statute. Although it is conceivable that there is *some* such residual authority, the terms and structure of the Act make clear that any such authority is highly circumscribed, and cannot be the basis for the sort of broad categorical exemption from the statutory requirements that the ABA seeks.

As discussed above, the GLBA also contains a general grant of rulemaking authority, empowering the Commission and other agencies to promulgate "such regulations as may be necessary to carry out the purposes of this subchapter . . . ." Section 504(a)(1), 15 U.S.C. § 6804(a)(1). This language provides the Commission with authority to adopt rules so long as they are "reasonably related to the purposes of the enabling legislation." *Mourning v. Family*

*Publications Serv. Inc.*,  411 U.S. 356, 369 (1973) (citation omitted); *see also Individual Reference Services Group v. FTC,* 145 F. Supp. 2d 6, 36 (D.D.C. 2001), *aff'd, sub nom. Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002).  However, since statutes must be interpreted as a whole, this grant of rulemaking authority must be interpreted in light of the limited grant of exemption authority contained in another subsection of the same statutory section.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (statute must be interpreted to create a "symmetrical and coherent regulatory scheme") (citation omitted).  Indeed, it might be argued, invoking the principle of *expressio unius est exclusio alterius* that the presence of a limited exemption authority precludes the grant of exemptions under the more general grant of authority.  *See, e.g., TRW Inc. v. Andrews*, 534 U.S. 19, 122 S. Ct. 441, 447 (2001) (express exception from statutorily-prescribed statute of limitations implies no additional exceptions).

The Commission has not adopted a rigid position that it has no exemption authority beyond that provided in Section 504(b), and there is no need for this Court to do so.  Indeed, some residual exemption authority might well be available.  For example, there might be occasions where, under recognized principles of administrative law, it would be appropriate for the Commission to invoke such authority, such as where a technical violation of the statute was truly *de minimis*, or where application of the statute's literal terms would lead to a result so manifestly contrary to congressional policy as to be patently absurd.  *See, e.g., Public Citizen,* 869 F.2d at 1556-57*; Alabama Power Co. v. Costle*, 636 F.2d 323, 360-61 (D.C. Cir. 1979).  In the absence of such extraordinary circumstances, however, the interrelationship between Sections 504(a) and 504(b) dictates that the Commission lacks the authority to grant the sort of broad exception the ABA seeks, exempting an entire profession from requirements expressly imposed by Congress.

15

The courts have long recognized that, unless Congress has been extraordinarily rigid in drafting a statute, administrative agencies have the authority to excuse truly *de minimis* departures from statutory requirements, even in the absence of express statutory exemption or general rulemaking authority, where literal application of a statute would add little or nothing to the accomplishment of the statutory goals. *See, e.g, Volkswagenwerk Aktiengesellschaft v. Fed. Maritime Comm'n*, 390 U.S. 261, 276 (1968); *Ober v. Whitman*, 243 F.3d 1190, 1193-95 (9th Cir. 2001); *Environmental Defense Fund, Inc. v. EPA*, 82 F.3d 451, 466 (D.C. Cir.), *opinion amended*, 92 F.3d 1209 (D.C. Cir. 1996); *Public Citizen*, 869 F.2d at 1557; *Alabama Power*, 636 F.2d at 360-61. Such cases, however, have emphasized the narrowness of this principle.  An agency is not free to engage, under the rubric of a *de minimis* exemption, in a weighing of whether the benefits of a particular statutory requirement outweigh the costs. *Alabama Power*, 636 F.2d at 361.  This is because "[w]hile agencies may safely be assumed to have discretion to create exceptions at the margins of a regulatory field . . . [they] surely do not have inherent authority to second guess Congress' calculations."  *Public Citizen*, 869 F.2d at 1557.  Rather, an agency's inherent *de minimis* authority is limited to instances where "the burdens of regulation yield a gain of trivial or no value." *Alabama Power*, 636 F.2d at 360-61.  *See also Natural Resources Defense Council, Inc. v. EPA*, 966 F.2d 1292, 1305-06 (D.C. Cir. 1992) (invalidating agency's exemption from administrative rule for construction sites of less than five acres because of  "lack of data" to support claim that small construction sites will have *de minimis* impact on local water quality).   Moreover, no *de minimis* exception is appropriate unless it would "implement[] the legislative design." *Alabama Power*, 636 F.2d at 360.  *See, e.g., Public Citizen v. Young*, 831 F.2d 1108, 1113, 1122 (D.C. Cir. 1987) ("rigid" language of statute did not permit application of *de minimis* exemption where food additive caused

cancer in animals, but risk to humans was "exceedingly small," because statute barred listing of chemicals causing cancer "in man or animal").  Thus, where literal enforcement of a statutory dictate demonstrably has a negligible effect, it is sometimes permissible for an agency to excuse it.

In the present case, much of the ABA's complaint urges that application of the GLBA's requirements to attorneys is unnecessary – and therefore an undue imposition on attorneys – in light of the existence of state bar rules that adequately protect client confidentiality regarding financial information.  *See, e.g.*, Complaint ¶ 25.  Arguments of this sort, calling for an open-ended weighing of costs and benefits, can of course be made to Congress when it considers enactments such as the GLBA.  But such arguments do not show that Section 503's requirement that financial institutions disclose their privacy policies, as that requirement applies to lawyers, confers only trivial or *de minimis* benefits on consumers.  On the contrary, despite the presence of state bar rules addressing confidentiality, it is clear that such rules rarely require any notice to consumers of the attorney's confidentiality obligations, let alone the types of disclosures required by Section 503.[8]

Section 503 calls for detailed and conspicuous notice disclosures which, even if they are unnecessary for some clients, may well provide useful information to other clients.  This may be particularly true if the client wants to compare the privacy policies of lawyers to those of other financial institutions (*i.e.*, non-attorney tax preparers or real estate settlement professionals) who are able to provide similar services to the individual and from whom a GLBA privacy notice has been

---

[8]  For example, one of the few jurisdictions to impose notice requirements on its lawyers, New York, provides a very limited notice that falls far short in many respects, from the detailed and conspicuous notice requirements in the GLBA.  *Compare* 22 N.Y.C.R.R. pt. 1210 (New York lawyers must display in their offices a brief statement contained in a "Statement of Client's Rights and Responsibilities") *with* 16 C.F.R. § 313.6(a) (GLBA notices include categories of information collected and disclosed by the financial institution, as well as the institution's privacy policies and practices).

provided. Moreover, notices also provide information about the attorney's client information

protection practices that may not be governed under state confidentiality laws – such as policies for

safeguarding the security of customer information – and that clients might find useful. Plaintiff

essentially concedes the distinct and independent obligations imposed by Sections 502 and 503 on

financial institutions. *See* Complaint ¶¶ 9, 10 (summarizing Section 503's notice requirements for

"customers," and "[i]n addition," Section 502's disclosure limitations on sharing "consumer" NPI).

     In addition to the notice provision, there are other instances when state bar rules do not

necessarily provide as thorough protection as the GLBA regarding the disclosure of client

information.[9] *Cf.* Complaint ¶ 25. For example, states may not prevent disclosure of the client's

identity and the fact of retention of counsel in certain circumstances. *See, e.g., Crews v. Wahl*, 520

S.E.2d 727, 732 (Ga. Ct. App. 1999) (client names and fact of attorney's employment is not

privileged, *citing Fowler v. Sheridan*, 121 S.E. 308 (Ga. 1924). *See generally In re Kaplan*, 168

N.E.2d 660, 661-62 (N.Y. 1960); Paul P. Carlucci, *Your Client's Identity: Is it Protected by the*

*Attorney/Client Privilege?*, 66 New York State Bar Journal 10 (December 1994). In contrast, *any*

information obtained by a financial institution in connection with providing a financial service or

product, including the consumer's identity and the fact of the customer relationship, is protected

---

    [9] Many states base their attorney confidentiality rules upon the American Bar Association
Model Rule of Professional Conduct ("ABA Model Rule") 1.6(a), which provides that "a lawyer
shall not reveal information relating to the representation of a client unless the client consents
after consultation, except for disclosures that are impliedly authorized in order to carry out the
representation" and for certain limited exceptions principally relating to the disclosure of a
client's illegal activities. The remaining states have attorney confidentiality rules that are either
based on similar rules governing client confidentiality in the ABA Model Code of Professional
Responsibility, or otherwise generally prohibit attorneys from revealing client "confidences" and
"secrets," subject to the same types of exceptions as those states applying Rule 1.6. *See*
Complaint ¶ 24.

under the GLBA and the privacy rule.  *See* 16 C.F.R. § 313.3(o)(1); *see also* 15 U.S.C.

§ 6809(4)(C)(i) (list of consumers derived using any nonpublic personal information is protected); 16

C.F.R. § 313.3(o)(2)(i)(C) (PIFI includes fact that individual was a customer of a financial

institution).  Moreover, the GLBA imposes standards for safeguarding the security and

confidentiality of customer information, including protection against unauthorized access to such

information, *see* 15 U.S.C. § 6801(b); 16 C.F.R. pt. 314 (2002), that may not be provided by state

law.

     Whether or not it would be good policy, on balance, to provide the sort of categorical

exemption that the ABA seeks, these examples demonstrate that it is clear, as a matter of law, that

one cannot write off these potential benefits as trivial.  Further, whatever the obvious benefits to

lawyers from obtaining an exemption, the Commission reasonably concluded that exempting an

entire category of entities otherwise subject to the Act would not "implement[ ] the legislative

design."  Accordingly, no *de minimis* exemption is appropriate here.

     Admittedly, the *de minimis* theory is not the only conceivable basis on which the

Commission might grant an exemption beyond the sort expressly authorized by Section 504(b).

However, as stated above, the fact that there are clear statutory limits on exemptions under Section

504(b) demands that any residual exemption authority, such as any exemption under the general

rulemaking authority of Section 504(a)(1), be applied sparingly – for example, where the

Commission's failure to do so would lead to a result manifestly contrary to the statutory policies.

Such a situation is simply not presented here.  For example, the ABA asserts that attorney

compliance with the GLBA notification requirement would "result in confusion and

misunderstanding on the part of clients . . ."  Complaint ¶ 26.  This argument is insubstantial.  The

GLBA simply requires a notification of basic information regarding the treatment of personal financial information, and there is no conflict between that requirement and state bar rules. Attorneys are well capable of crafting notices that will provide clients with the information required by the GLBA, without confusing clients about state bar rules. For example, they are perfectly free to explain, if they think appropriate, the complementary nature of the protections under the two schemes.

Further, plaintiff has not alleged that anything in the GLBA *requires* disclosures that are otherwise prohibited by state bar confidentiality rules nor that anything in the state laws requires disclosures that violate the GLBA. Lawyers can easily comply with both their GLBA and state confidentiality obligations as part of a "dual regulatory scheme." *See Northwest Central Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 514-18 (1989); *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n*, 461 U.S. 190, 218-19 (1983); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963). An attorney can comply with both laws simply by complying with the more stringent state confidentiality rule and not disclosing client confidences unless the client consents (or as otherwise permitted under the state law). Where state law does not protect consumer information or address an area covered by the GLBA, such as providing privacy notices to customers, the attorney must also comply with the GLBA requirements. In the absence of any showing that it is impossible for attorneys to take such measures, it was eminently reasonable for the Commission to conclude that this is not such a serious problem as to require the grant of an exemption that would be outside of the express exemption authority of the statute.

The Commission's refusal to grant a categorical exemption to attorneys is also consistent with long-established precedent that remedial statutes, like the GLBA, must be construed broadly to effectuate their remedial purposes and that their statutory exceptions must be construed narrowly. *See Jefferson County Pharm. Assoc. v. Abbott Lab.* 460 U.S. 150, 159 (1983) (sale of pharmaceutical products to state and local government hospitals for resale in competition with private pharmacies not exempt from antitrust laws) (citations omitted).  For the same reasons, there is a "heavy presumption against implicit exemptions" from federal laws, particularly those protecting consumers.  *See id.,* 460 U.S. at 157-58 (citations omitted); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 787 (1975) .

Indeed, the Supreme Court has specifically held that lawyers should not be exempted implicitly from the coverage of federal statutes protecting consumers unless subjecting them to the statute would be clearly contrary to the legislative text, purpose, and history.  In *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995), the Court refused to imply an exception for lawyers from the federal Fair Debt Collection Practices Act, holding that "nothing either in the Act or elsewhere indicat[es] that Congress intended to authorize the FTC to create this exception from the Act's coverage . . . [that] falls outside the range of reasonable interpretations of the Act's express language."  *See also Goldfarb,* 421 U.S. at 787-88, 792 (refusing to imply an exemption from the Sherman Antitrust Act for lawyers, because doing so would run counter to the congressional purposes, even though "the States have a compelling interest in the practice of professions within their boundaries . . .") Similarly, nothing in the GLBA's text, purpose, or history authorizes the FTC to manufacture a categorical exception for attorneys.  Only Congress can effect such an exemption.

21

In sum, the Commission properly refused to modify its privacy rule to exempt lawyers from the GLBA notice requirements where it lacked the express exemption authority to do so and where the exception did not fall under its inherent *de minimis* authority and did not appropriately further the purposes of the Act under its general rulemaking authority. Such a decision was proper and should be upheld by this Court.[10]

---

[10]    In its privacy rule, the Commission determined that institutions of higher education that are "financial institutions" for purposes of the GLBA, and that are in compliance with the obligations of Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and its implementing regulations, 34 C.F.R. pt. 99, which protect a student's "education records," "shall be deemed to be in compliance with" the GLBA privacy provisions. 16 C.F.R. § 313.1(b); 65 Fed. Reg. at 33648. FERPA and its implementing rules generally prohibit an educational agency or institution from receiving funds if it releases students' "education records (or personally identifiable information contained therein other than directory information . . .)" without the written consent of the parents or eligible students with certain narrow exceptions. 20 U.S.C. §§ 1232g(b)(1), (b)(2), (d). The ABA suggests that attorneys also should have been "deemed in compliance with" the GLBA, because state bar rules protect client confidences in a similar fashion to the protection of student privacy afforded under FERPA. Complaint ¶ 17. However, there are several reasons why the Commission took a different approach to universities than to lawyers. Perhaps most important, FERPA requires, unlike most state confidentiality rules, annual notices that "are reasonably likely to inform the parents or eligible students of their rights" under that act and the procedures to enforce those rights. *See* 20 U.S.C. § 1232g(e); 34 C.F.R. § 99.7. Further, unlike the state attorney confidentiality rules that impose varying levels of protection governing client confidences in the fifty states, FERPA imposes a single federal uniform statutory regime to protect students' education records. Moreover, FERPA provides the same or greater privacy protections than provided for in the GLBA and that may be absent in certain states' confidentiality rules. For example, FERPA and its implementing rules permit the parents or eligible students to inspect and review the student's education records, 20 U.S.C. § 1232g(a)(1), 34 C.F.R. § 99.10; provide an opportunity to correct or delete any inaccurate or misleading information, 20 U.S.C. § 1232g(a)(2), 34 C.F.R. § 99.20; require the institution to keep a record of all parties who request and those who obtain access to the education records, 20 U.S.C. § 1232g(b)(4)(A), 34 C.F.R. § 99.32; and impose redisclosure restrictions on third parties receiving personally identifiable information from an education record. 20 U.S.C. § 1232g(b)(4)(B), 34 C.F.R. § 99.33. Thus, while it was eminently reasonable to conclude that imposing GLBA requirements on universities that comply with FERPA resulted in little or no public benefit, the same cannot be said for attorneys.

IV.    **THE COMMISSION'S REFUSAL TO EXEMPT ATTORNEYS FROM THE GLBA
       WAS REASONABLE AND COMPLIED WITH THE ADMINISTRATIVE
       PROCEDURE ACT**

The denial by the Director of the Commission's Bureau of Consumer Protection of the

ABA's request for an attorney exemption also fully complied with the agency's obligations under the

Administrative Procedure Act (APA).  *Cf.* Complaint ¶¶ 18-23, 30-31.  Under 5 U.S.C. § 706(2)(A),

the decision not to amend the privacy rule to exempt attorneys can only be overturned if it was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See*

*American Horse Protection Ass'n, Inc. v. Lyng*, 812 F.2d 1, 4 (D.C. Cir. 1987); *WWHT, Inc. v. FCC*,

656 F.2d 807, 815-16 (D.C. Cir. 1981).  The decision not to engage in rulemaking, to modify a rule,

or to grant exceptions or waivers to a rule is subject to "extremely narrow" judicial review.  *See*

*Marshall County,* 988 F.2d at 1224-25, 1227; *American Horse,* 812 F.2d at 4-5; *WWHT,* 656 F.2d at

809, 815-818.  The court should not "substitute its view for that of the agency" and the "agency's

decision must be upheld under this standard 'if the agency's path may reasonably be discerned' and

will only be reversed where 'there has been a clear error of judgment.'" *IRSG,* 145 F. Supp. 2d at 24-

25 (*citing Motor Vehicle Manuf. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983)).

Further, an agency is only required to provide "a brief statement of the grounds for denial" under the

APA.  5 U.S.C. § 555(e).

The agency reviewed the materials submitted by plaintiff and other bar associations

concerning an attorney exemption under the GLBA and fully considered all relevant factors.

Contrary to plaintiff's assertion, Complaint ¶ 20, the April 8, 2002, response to the ABA provided a

sufficient statement of reasons that adequately reflected the "agency's path."  The Bureau Director

stated that there were questions concerning its legal authority to grant the requested exemption.

Complaint ¶ 20.  Keeping any regulatory actions within the authority granted by Congress, and refusing to create an implied exception from the statutory scheme, is, of course, an eminently sound reason for withholding such action.  *See supra* at 11-22. While the explanatory statement was brief, it fully satisfied the Commission's obligations under the APA.  *See Roelofs v. Sec'y of Air Force*, 628 F.2d 594, 600-01 (D.C. Cir. 1980) (5 U.S.C. § 555(e) is satisfied by "at least some statement of reasons at the time [the agency] takes its action").

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that this action be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

_____/s/_____
ROSCOE C. HOWARD, JR.
D.C. Bar No. 246470
United States Attorney

_____/s/_____
MARK E. NAGLE
D.C. Bar No. 416364
Assistant United States Attorney

_____/s/_____
BRIAN J. SONFIELD
D.C. Bar No. 449098
Assistant United States Attorney
Judiciary Center Bldg., Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7143

JOHN F. DALY
D.C. Bar No. 250217
Deputy General Counsel for Litigation

MICHAEL D. BERGMAN
D.C. Bar. 437994
Attorney
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C.  20580
(202) 326-3184
Fax: (202) 326-2477

December 9, 2002