# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN BAR ASSOCIATION )
)
         Plaintiff, )
)
         v. )
)
FEDERAL TRADE COMMISSION )
)
         Defendant. )
)

No. 1: 02CV01883 (RBW)

## MEMORANDUM OF THE AMERICAN BAR ASSOCIATION
## IN OPPOSITION TO THE FTC'S MOTION TO DISMISS THE COMPLAINT

Darryl L. DePriest
General Counsel
American Bar Association
541 North Fairbanks Court
14th Floor
Chicago, Illinois 60611
(312) 988-5215

David L. Roll
Robert E. Jordan, III
Rhonda M. Bolton
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-3000

January 10, 2003

## TABLE OF CONTENTS

TABLE OF AUTHORITY ............................................................................................. i

INTRODUCTION .................................................................................................... 1

BACKGROUND ....................................................................................................... 2

    A.    The FTC's Description Of The Scope Of The Term "Financial Institution"
        Is Misleading .............................................................................................. 3

    B.    Except For A Single Sentence, The FTC Ignores The Document At Issue
        In This Case – The April 8, 2002 Staff Opinion Letter ............................... 4

    C.    The FTC Avoids Mention Of How Inclusion Of Lawyers Advances The
        Purposes Of The GLBA .............................................................................. 6

ARGUMENT ........................................................................................................... 7

I.     STANDARD OF REVIEW ..................................................................................... 7

    A.    The FTC's Statutory Interpretation ............................................................ 7

    B.    The Arbitrary And Capricious Standard .................................................... 8

    C.    Review Of The Facts ................................................................................... 9

II.    IT IS CLEAR FROM THE TEXT, PURPOSE AND LEGISLATIVE HISTORY
     OF THE GLBA THAT THE PRACTICE OF LAW IS NOT COVERED BY THE
     ACT ........................................................................................................................ 10

    A.    The Text Of The GLBA Reflects No Congressional Intent To Cover The
        Practice Of Law ........................................................................................ 10

        1.    There is no ambiguity – Congress does not "hide elephants in
            mouseholes" ................................................................................... 10

        2.    The enumerated exceptions to GLBA's disclosure provisions
            demonstrate that the Act does not cover the practice of law ............ 14

        3.    The practice of law is not closely related to banking ..................... 16

    B.    The Purposes Of The GLBA Reflect That It Has Everything To Do With
        The Financial Services Industry And Nothing To Do With The Practice Of
        Law ........................................................................................................... 21

        1.    The Overall Purposes of the GLBA ................................................ 21

        2.    The Policy of the GLBA's Privacy Provisions ................................ 22

    C.    The Legislative History Of The GLBA Likewise Reflects That The Statute
        Was Not Intended To Cover The Practice Of Law ..................................... 26

    D.    Conclusion – The FTC Opinion Letter Must Be Set Aside ....................... 29

III.   THE FTC'S OPINION LETTER LACKS PERSUASIVE POWER AND
     SHOULD BE ACCORDED NO WEIGHT BY THE COURT ........................................ 29

    A.    Lack Of Thorough Consideration ............................................................. 30

B.    Flawed Reasoning.................................................................................30

C.    Inconsistency.......................................................................................31

    1.    The FTC's earlier exemption of higher education institutions.................31

    2.    The FTC's later admission of inherent exemption authority.....................31

D.    The Court Should Adopt The Most Plausible Reading Of The GLBA.................32

IV.   THE FTC'S OPINION LETTER, WHICH ASSUMES WITHOUT ANY
EXPLANATION THAT LAWYERS ENGAGED IN THE PRACTICE OF LAW
ARE COVERED BY THE GLBA, CONSTITUTES ARBITRARY AND
CAPRICIOUS AGENCY ACTION ...................................................................33

V.    THE FTC'S OPINION LETTER, WHICH REFUSED TO EXEMPT LAWYERS
ENGAGED IN THE PRACTICE OF LAW, CONSTITUTES ARBITRARY
AND CAPRICIOUS AGENCY ACTION ..........................................................34

A.    The FTC Arbitrarily And Capriciously Failed To Consider Its Residual Or
Inherent Exemption Authority ..............................................................34

B.    The FTC's Failure To Articulate A Satisfactory Explanation For Its
Refusal To Exempt Renders Its Opinion Letter Arbitrary And Capricious...........35

C.    The FTC's Exemption Of Higher Education Demonstrates That Its
Refusal To Exempt The Practice Of Law Was Arbitrary And Capricious...........35

D.    The FTC Arbitrarily And Capriciously Failed To Take A Hard Look At
The Issues Raised By The ABA ............................................................39

CONCLUSION.................................................................................................44

## TABLE OF AUTHORITIES

### FEDERAL CASES

*American Horse Protection Association v. Lyng*,
  812 F.2d 1, 115 S. Ct. 1489 (D.C. Cir. 1987)...........................................................37,40

*Bellsouth Corp. v. FCC*, 162 F.3d 1215 (D.C. Cir. 1999) .................................................40

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837, 104 S. Ct. 2778 (1984)...................................................................7,30

*Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655 (2000)..................... 8,29-30

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S. Ct. 814 (1971),
  *overruled on other grounds by Califano v Sanders,* 430 U.S. 99,
  97 S. Ct. 980 (1970) .....................................................................................8,33

*Davis v. Monroe County Board of Education*, 526 U.S. 629, 119 S. Ct. 1661
  (1999) ..................................................................................................................9

*Dickson v. Secretary of Defense*, 68 F.3d 1396 (D.C. Cir. 1995)....................................35

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120, 120 S. Ct. 1291 (2000).................................................................12,14

*Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) ......................................................41

*Greater Boston Television Corp. v. FCC*, 444 F.2d 841 (D.C. Cir. 1970) ......................31

*Heinz v. Jenkins*, 514 U.S. 291 (1995)........................................................................ 41-42

*Individual Reference Services Group v. FTC*, 145 F. Supp. 2d 6 (D.D.C. 2001)...14, 24,27

*Independent Insurance Agents of America, Inc. v. Hawke*,
  211 F.3d 638 (D.C. Cir. 2000) ..............................................................................30

*International Brotherhood of Teamsters v. Daniel*,
  439 U.S. 551, 99 S. Ct. 790 (1979).....................................................................10,26

*Jefferson County Pharmaceutical Assocs. v. Abbott Labs.*,
  460 U.S. 150 (1983)............................................................................................41

*MCI Telecommunications Corp. v. AT&T*,
  512 U.S. 218, 114 S. Ct. 2223 (1994)......................................................................11

*Marshall County Health Care Auth. v. Shalala*,
988 F.2d 1221 (D.C. Cir. 1993)................................................................36

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 103 S. Ct. 2856 (1983).........................................9,33-35

*National Courier Ass'n v. Board of Governors of the Federal Reserve System*,
516 F.2d 1229 (D.C. Cir. 1975).................................................................16

*Panhandle Eastern Pipe Line Co. v. FERC*, 890 F.2d 435 (D.C. Cir. 1989) ................8,33

*Public Citizen v. U.S. Department of Justice*,
491 U.S. 440, 109 S. Ct. 2558 (1989).........................................................21

*Qi-Zhou v. Meissner*, 70 F.3d 136 (D.C. Cir. 1995) .........................................14

*Skidmore v. Swift*, 232 U.S. 134, 65 S. Ct. 161 (1944).................................8,29,30

*Stockton v. Ford*, 52 U.S. 232, 247 (1850) .....................................................19

*Timpinaro v. SEC*, 2 F.3d 453 (D.C. Cir. 1993) ...............................................28

*Trans Union, LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002) ................................14

*United States v. Mead Corp.*, 533 U.S. 218, 121 S. Ct. 2164 (2001) .............................8,29

*WAIT Radio v. FCC*, 418 F.2d 1153 (D.C. Cir. 1969).........................................40

*Wells Fargo Bank v. FDIC*, 310 F.3d 202 (D.C. Cir. 2002)..........................................7,10

*Whitman v. American Trucking Ass'ns, Inc.*,
531 U.S. 457, 121 S. Ct. 903 (2001) ..............................................10,11,32

## DOCKETED CASES

*New York State Bar Ass'n v. FTC*, No. 1:02CV00810 (D.D.C. file Apr. 29, 2002)............6

## FEDERAL STATUTES, RULES, REGULATIONS AND LEGISLATIVE MATERIALS

Administrative Procedure Act

5 U.S.C. §§ 701-706 (1996).................................................................1

5 U.S.C. § 706.................................................................................5

5 U.S.C. § 706(2)(A)..........................................................................8

Bank Holding Company Act of 1956 ......................................................................3,10,13

    12 U.S.C. § 1843(c)(8) ...........................................................................................17

    12 U.S.C. § 1843(k)(4) ..........................................................................................13

    12 U.S.C. § 1843(k)(4)(F).....................................................................................13

Gramm-Leach-Bliley Act ....................................................................................... passim

    15 U.S.C. § 6801-6809 (Supp. 2002)......................................................................2

    15 U.S.C. § 6801(a) ..............................................................................................22

    15 U.S.C. § 6802(e) ..............................................................................................15

    15 U.S.C. § 6807....................................................................................................16

    15 U.S.C. § 6809(3) ..............................................................................................12

    15 U.S.C. § 6809(3)(A)..........................................................................................13

Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g.........................36

8 U.S.C. § 1372..............................................................................................................38

Fed. R. Civ. P. 12(b)(6)................................................................................................1,9

Bank Holding Companies and Change in Bank Control (Regulation Y), List of
    Permissible Nonbanking Activities, 12 C.F.R. § 225.28 (2002) ..................................14

16 C.F.R. Pt. 313............................................................................................................3

Bank Holding Companies and Change in Bank Control (Regulation Y), Final
    Rule, 62 Fed. Reg. 9290 (Feb. 28, 1997)....................................................................17

Bank Holding Companies and Change in Bank Control; Expanded List of
    Permissible Nonbanking Activities (Regulation Y), Final Rule,
    51 Fed. Reg. 39,994 (Nov. 4, 1986)...................................................................... 18-19

Privacy of Consumer Financial Information, Final Rule,
    65 Fed. Reg. 33,646 (May 24, 2000) .....................................................................31,36

S. Rep. No. 1084, 91st Cong., 2d Sess. 12, *reprinted in* 1970 U.S.C.C.A.N. 5519 ..........16

H.R. Rep. 106-74, pt. 3 (June 15, 1999) ................................................................24, 27

H.R. Conf. Rep. No. 106-434 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245, 245 ...........26

*Bancorp Hawaii, Inc.*, 71 Fed. Res. Bull. 168 (1985) .......................................................18

*Norwest Corp.*, 76 Fed. Res. Bull. 1058 (1990) ...............................................................17

145 Cong. Rec. S13891 (daily ed. Nov. 4, 1999) (statement of Sen. Bryan) .............. 27-28

145 Cong. Rec. S13908 (daily ed. Nov. 4, 1999) (statement of Sen. Burns) ...................28

## STATE STATUTES AND RULES

Cal. Bus. & Prof. Code § 6068(e) (West 1990) .................................................................23

Wash. S. Ct. R. 24(a) .........................................................................................................19

## MISCELLANEOUS

Bank Holding Company Supervision Manual § 3130.6.2 (June 1998) ...........................19

John Gibeaut, *Another Try:  ABA Task Force Takes a Shot Defining the Practice
     of Law*, ABA Journal (Dec. 2002) ...........................................................................19

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure:
     Civil* § 1357 (2d ed. 1990) ........................................................................................9

ABA Model Code of Professional Responsibility  ....................................................20,23

ABA Model Rules of Professional Conduct  ................................................................20

     Preamble  ................................................................................................................20

     Model Rule 1.1................................................................................................................20

     Model Rule 1.2(a) .....................................................................................................20

     Model Rule 1.2(d) .....................................................................................................20

     Model Rule 1.4................................................................................................................20

     Model Rule 1.6................................................................................................................22,23

     Model Rule 1.6(a) .....................................................................................................22,23

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BAR ASSOCIATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1: 02CV01883 (RBW) |
| v. ) | |
| ) | |
| FEDERAL TRADE COMMISSION ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF THE AMERICAN BAR ASSOCIATION
## IN OPPOSITION TO THE FTC'S MOTION TO DISMISS THE COMPLAINT

This matter is before the Court on the motion of the defendant, the United States Federal Trade Commission ("FTC"), to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff, the American Bar Association ("ABA"), respectfully urges the Court to deny the FTC's motion. Plaintiff also requests oral argument on this matter.

## INTRODUCTION

In this case, the ABA challenges an FTC staff opinion letter under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (1996). The ABA believes the FTC has overreached.

In its opinion letter, attached hereto as Exhibit A, the FTC concludes that a federal banking statute regulates certain aspects of the practice of law. The statute in question is the Gramm-Leach-Bliley Act ("GLBA" or "Act"). The GLBA permits banks, securities firms and insurance companies to affiliate with one another. Because Congress was concerned about the

effect on consumers of these affiliations, it included privacy protection provisions in the GLBA. *See* 15 U.S.C. §§ 6801 *et seq.* (Supp. 2002).

The GLBA, including its privacy provisions, makes no mention of lawyers or the practice of law.  The FTC notice-and-comment rulemaking concerning the privacy provisions of GLBA made no mention of lawyers or the practice of law.

Now, however, in a staff opinion letter, the FTC takes the position that lawyers engaged in several types of practice areas are regulated by the privacy provisions of the GLBA. It takes this position even though these same lawyers, like all lawyers, are subject to the laws of the 50 states and the District of Columbia which strictly regulate the privacy, confidentiality and security of all client information.  In fact, lawyers must comply with broader and more stringent privacy protections than those spelled out in the GLBA.

As the FTC states in its Motion to Dismiss, it sees no reason why lawyers should not be subjected to a "dual regulatory scheme."[1]  This is regulatory overkill that will only serve to confuse clients.  The language, purpose and legislative history of the GLBA clearly indicate that its privacy provisions were not intended to cover lawyers engaged in the practice of law. For these reasons, the ABA challenges the FTC's opinion letter.  The FTC staff has exceeded its authority and its opinion letter constitutes arbitrary and capricious agency action.

## BACKGROUND

Because the "Background" section of the FTC's Motion to Dismiss is seriously misleading, it needs to be addressed at the outset.

---

[1] *See* FTC's Motion to Dismiss for Failure to State A Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) (filed Dec. 9, 2002), at 20 (hereinafter "Mot. to Dismiss").

A.    **The FTC's Description Of The Scope Of The Term "Financial Institution" Is Misleading**

As the FTC explains, the GLBA defines a "financial institution" as an "institution" engaged in "financial activities," the latter term being defined by reference to the Bank Holding Company Act of 1956 ("BHCA"), which enumerates a list of "financial activities" and also authorizes the Federal Reserve Board ("FRB") to add to this list by regulation.  Mot. to Dismiss at 2-3.  The FTC's explanation is followed, however, by a conclusory assertion that under the BHCA and the FRB's determinations, "[a]nyone (including lawyers) engaging in these activities is a 'financial institution' under GLBA."  *Id.* at 3.

This statement is misleading because it implies that the GLBA, the BHCA, and/or the FRB's determinations contain definitions that expressly bring the practice of law within the ambit of the GLBA.  In fact, just the opposite is true.  As to the GLBA, there is absolutely no mention of the practice of law or lawyers.  Moreover, despite the FTC's assertion during its lengthy and comprehensive notice-and-comment rulemaking that the term "financial institution" would be defined "very broadly," *see id.* at 5, there was no mention during the FTC's rulemaking proceeding that the term would be defined so as to encompass the practice of law, and the final rule does not mention lawyers or the practice of law.  *See* 16 C.F.R. Pt. 313 (2002).  Indeed, it is counter-intuitive for one to conclude that solo practitioners, or for that matter any lawyer engaged in the practice of law, would ever be regarded as a "financial institution" no matter how broad that term might be.  The FTC prefers not to admit it, but it was only *after* it completed its rulemaking that its staff issued a cryptic interpretation of the statute saying the practice of law was covered by the GLBA.

Like the GLBA, the BHCA does not even mention the practice of law or lawyers.  And, as discussed in greater detail below, the only mention of the practice of law in FRB

determinations concerning the "financial activities" highlighted by the FTC here – debt collection, real estate settlement services, and tax planning and preparation services – is a *warning* by the FRB that it was only permitting "financial institutions" to engage in aspects of these activities which did *not* involve the practice of law. *Infra* at 18-19.

In sum, it is highly misleading to suggest, as the FTC does in its supposedly neutral "Background" section, that the practice of law was included in the financial activities approved by the FRB or that the FTC's rulemaking proceeding mentioned lawyers or the practice of law. As will be seen, the practice of law is excluded from the GLBA and it was not until *after* the rulemaking was completed, and opportunity for public comment was closed, that the FTC decided to announce its position that lawyers and the practice of law were covered.

**B.    Except For A Single Sentence, The FTC Ignores The Document At Issue In This Case – The April 8, 2002 Staff Opinion Letter**

*After* the rulemaking was completed, it was widely reported in the press that the FTC enforcement staff had decided that lawyers would be covered by the GLBA. Compl. ¶ 18. The ABA and other bar associations had numerous meetings with, and sent several letters to, the FTC asking it to make clear that the practice of law was not covered by the GLBA, or to use its authority to exempt lawyers from coverage. On April 8, 2002, the FTC staff issued the following response which is the subject of this lawsuit and which the FTC's Motion to Dismiss mentioned only once[2]:

> We have carefully considered your concerns, and recognize the issues you have raised regarding the application of the GLBA Act to attorneys at law. However, there are significant questions as to the legal authority of the Commission to grant the exemption you request.

---

[2] *See* Mot. to Dismiss at 23.

> As you know, the GLB Act itself states that entities engaged in "financial activities" are subject to the Act. Although the Commission has express authority under the GLB Act to grant exceptions, that authority is limited to providing exceptions to the requirements of Section 502. The Act does not provide the Commission with express authority to grant exemptions from the other provisions of the GLB Act, including the initial and annual notice provisions. See GLB Act § 504 (b), 15 U.S.C. 6804 (b).[3]

Along with two introductory paragraphs, the foregoing constitutes the entirety of the FTC's response to the serious questions raised by the ABA concerning statutory interpretation and consequences for the bar and the public. Notably, the FTC's opinion letter failed to discuss or analyze the fundamental issue of whether the practice of law is covered by GLBA, and made no mention of another critical issue – the FTC's "residual" exemption authority which the FTC litigation team now freely admits it has. See Mot. to Dismiss at 15, 19, 22. These are among the reasons the ABA challenges the opinion letter as arbitrary and capricious, as well as beyond the agency's authority, under the APA, 5 U.S.C. § 706 (1996).

Despite the fact that the FTC opinion letter is the centerpiece of the ABA's Complaint and the subject of its challenge under the APA, the FTC makes only a single, fleeting allusion to the letter in its "Background" section (Mot. to Dismiss at 6), and only one other reference in its entire brief (Mot. to Dismiss at 23). It is obvious, therefore, that the FTC litigation team would prefer that this Court not examine the letter and discover its obvious shortcomings.

---

[3] Letter from J. Howard Beales, Director, Bureau of Consumer Protection, Federal Trade Commission, to Robert E. Hirshorn, President, and Robert D. Evans, Director, Governmental Affairs, American Bar Association (Apr. 8, 2002) (hereinafter, "FTC opinion letter" or "FTC staff opinion letter") (attached hereto as Exhibit A for the Court's convenience).

### C.    The FTC Avoids Mention Of How Inclusion Of Lawyers Advances The Purposes Of The GLBA

The first sentence of the FTC's "Background" section states that the purpose of the GLBA is "to permit the affiliation of banks, securities firms, insurance companies and other financial institutions with each other." Mot. to Dismiss at 2 (citation omitted).  In the related *New York State Bar Association* case[4] also pending before this Court, the FTC says the purpose of the GLBA is:

- "to enhance competition in the financial services industry,"

- "to allow domestic financial services firms to better compete globally," and

- "to protect against unauthorized sharing of customer's financial information which would otherwise be marketed by financial institutions."

*See* FTC's Reply Mem. in Support of Def.'s Mot. to Dismiss, *New York State Bar v. FTC*, (dated Nov. 18, 2002), at 20 (citation omitted).  However, nowhere has the FTC tried to link any of these purposes to the practice of law or to show how these purposes would be advanced if lawyers were covered by the GLBA.

The reason for this failure is obvious.  It is clear from the above-stated purposes that the GLBA could not have been intended to cover lawyers engaged in the practice of law. Congress did not set out to help U.S. lawyers compete globally, or to help lawyers affiliate with banks, securities firms, or insurance companies.  Nothing in the legislative history of the statute indicates otherwise.  Moreover, lawyers are precluded by state law from "sharing" or "marketing" their clients' information.

---

[4] *New York State Bar Ass'n v. FTC*, No. 1:02CV00810 (RBW) (D.D.C. filed Apr. 29, 2002) (hereinafter, "*New York State Bar v. FTC*").

Thus, the above-stated purposes of the GLBA have no application or relevance to the practice of law. For this reason, the FTC makes no attempt in its "Background" section to explain how inclusion of the practice of law within the GLBA would advance these purposes.

## ARGUMENT

## I.    STANDARD OF REVIEW

Perhaps in the hope that its status as a federal agency would entitle its views to deference, the FTC's Motion to Dismiss avoids any discussion of the standard of review and ignores the fact that the ABA is challenging an FTC staff opinion letter. Set forth below are the principles and cases that should govern this Court's review of the ABA's challenge to the FTC opinion letter of April 8, 2002 under the APA.

### A.    The FTC's Statutory Interpretation

In determining whether the FTC exceeded its authority when it decided in its opinion letter that lawyers engaged in the practice of law are covered by the GLBA, a reviewing court must first determine whether the intention of Congress is clear from the statute, "for both [the courts] and the agency must give effect to Congress's unambiguously expressed intent." *Wells Fargo Bank v. FDIC*, 310 F.3d 202, 205 (D.C. Cir. 2002) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781-82 (1984)). As the final authority on issues of statutory construction, the court makes this determination, giving the agency "no deference at all on the question [of] whether a statute is ambiguous." *Wells Fargo*, 310 F.3d at 206 (citations and internal quotation marks omitted). The court's determination as to ambiguity is made "consider[ing] the provisions at issue in context, using traditional tools of statutory construction and legislative history." *Id.* (citation omitted).

- 7 -

If the statute is not ambiguous – that is, if it is clear from the text, purpose and legislative history of the GLBA that Congress did not intend the statute to cover the practice of law – then the FTC's interpretation must be set aside.

However, if the statute is ambiguous, the FTC's interpretation, which was conveyed in a post-rulemaking staff opinion letter, must be assessed under the standard articulated by the Supreme Court in *Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655 (2000). According to *Christensen*, the FTC staff opinion letter is "'entitled to respect' under [the Court's] decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, but only to the extent that [the agency's] interpretations have the "'power to persuade.'" 529 U.S. at 587, 120 S. Ct. at 1663 (quoting *Skidmore*). The factors relevant to determining the persuasive power of an agency interpretation include "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *United States v. Mead Corp.*, 533 U.S. 218, 228, 121 S. Ct. 2164, 2172 (2001) (quoting *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 161) (internal quotation marks omitted). If the FTC opinion letter fails to satisfy these criteria, the agency's interpretation cannot stand.

**B.    The Arbitrary And Capricious Standard**

Review of the FTC's opinion letter is also governed by the "arbitrary and capricious" standard of Section 706 of the APA. 5 U.S.C. § 706(2)(A) (1996). Under this standard, the reviewing court is to assess whether the agency engaged in "reasoned decisionmaking, taking a hard look at the salient problems before it," *Panhandle Eastern Pipe Line Co. v. FERC*, 890 F.2d 435, 439 (D.C. Cir. 1989) (citations and internal quotation marks omitted); whether the agency's decision was "based on a consideration of the relevant factors," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 823-24 (1971),

- 8 -

*overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980 (1977); and whether the agency has articulated a satisfactory explanation for its decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48-49, 103 S. Ct. 2856, 2869 (1983). Agency actions that fail to meet this standard cannot be upheld.

### C.     Review Of The Facts

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff, and the court must assume the truth of all of the factual allegations in the complaint. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S. Ct. 1661, 1666 (1999) ("in reviewing the legal sufficiency of [a] cause of action, [the court] . . . must assume the truth of the material facts as alleged in the complaint.") (citation and internal quotation marks omitted); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1357, at 319 (2d ed. 1990) ("the court will accept the pleader's description of what happened to him along with any conclusions that can reasonably be drawn therefrom.").

Accordingly, the court must assume to be true all of the allegations in paragraphs 26-28 of the ABA's Complaint involving severe and irreparable harm to the bar and to the public resulting from the FTC's interpretation of the GLBA, including in particular: the unreasonable costs and undue burden imposed by the privacy notice requirement; client confusion and the undermining of public trust and confidence in the legal profession; and lawyers' exposure to FTC investigation and enforcement actions for noncompliance with the GLBA. Compl. ¶¶ 26-28.

- 9 -

II.    **IT IS CLEAR FROM THE TEXT, PURPOSE AND LEGISLATIVE HISTORY OF THE GLBA THAT THE PRACTICE OF LAW IS NOT COVERED BY THE ACT**

As explained above, a court's first task in reviewing an agency's interpretation of a statute is to determine whether the intention of Congress is clear from the statute, employing the "traditional tools of statutory construction and legislative history" to accomplish this task. *Wells Fargo*, 310 F.3d at 206. That Congress did not intend GLBA to cover the practice of law can clearly be discerned from the text, purpose and legislative history of the Act.

A.    **The Text Of The GLBA Reflects No Congressional Intent To Cover The Practice Of Law**

"The starting point in every case involving construction of a statute is the language itself." *Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 558, 99 S. Ct. 790, 795 (1979) (citations and internal quotation marks omitted). The GLBA spans hundreds upon hundreds of pages. Nowhere in that sea of words is there any mention that lawyers, legal services or the practice of law are covered or intended to be covered by the Act. Nor, indeed, is there any mention of the practice of law in the BHCA, the FRB's enumeration of "financial activities" in the regulations implementing the BHCA, the FTC's rulemaking or its resulting regulations. Although the FTC recognizes, as it must, the glaring absence of a reference to the practice of law *anywhere* in the statutory or regulatory scheme, the agency attempts to wish away this critical fact as "immaterial." Mot. to Dismiss at 10. However, courts – and the Supreme Court in particular – do not share the FTC's dismissive attitude toward statutory text.

1.    **There is no ambiguity – Congress does not "hide elephants in mouseholes"**

In *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 121 S. Ct. 903 (2001) ("*ATA*"), the Supreme Court discussed what it means when a matter of significance is

left unaddressed by Congress and it held that the failure of Congress to address an important

issue is not robotically treated as an "ambiguity," thus giving an agency carte blanche to create

or fundamentally alter an entire regulatory scheme.  At issue in *ATA* was the proper

interpretation of a provision of the Clean Air Act directing the Environmental Protection Agency

("EPA") to develop air quality standards.  EPA maintained that the Act permitted it to

promulgate standards taking into account *costs* of implementation.  The Court rejected EPA's

interpretation after reviewing the statutory language directing the agency to set the standards, and

observing that the text of this provision made no mention of costs as part of the standard-setting

process.  *See ATA*, 531 U.S. at 469, 121 S. Ct. at 910 ("[the provisions describing how the health

effects of pollutants in air are to be calculated and given effect] say not a word about costs.")

(citation omitted).  Arguments that the statute conferred implicit authority to consider costs

foundered, the Court explained, because "Congress . . . does not alter the fundamental details of

a regulatory scheme in vague terms or ancillary provisions – it does not, one might say, hide

elephants in mouseholes."  531 U.S. at 468, 121 S. Ct. at 910-11 (citations omitted).[5]

          In sum, where a statute makes no mention of a significant issue – such as whether

an industry or profession is to be federally regulated – this is not automatically to be treated by

courts as an "ambiguity," but in fact signals that Congress unambiguously intended that the

agency *not* act to alter the existing regulatory landscape.  *See ATA*, 531 U.S. at 468-69, 121 S.

Ct. at 910 ("The implausibility of Congress's leaving a highly significant issue unaddressed (and

---

          [5] *See also MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231, 114 S. Ct. 2223, 2232
(1994) (a provision of the Communications Act of 1934 giving the Federal Communications
Commission discretion to "modify" any requirement imposed under the statute clearly was not
intended by Congress to give the agency authority to render voluntary the otherwise mandatory
requirement that long distance carriers must file tariffs, as "[i]t is highly unlikely that Congress
would leave the determination of whether an industry will be entirely, or even substantially, rate-
regulated to agency discretion – and even more unlikely that it would achieve that through such a
subtle device as permission to 'modify' rate-filing requirements.").

thus 'delegating' its resolution to the administering agency) is assuredly one of the factors to be considered in determining whether there is ambiguity") (citing *Christensen*, 529 U.S. at 590, 120 S. Ct. at 1664, n.*) (Scalia, J., concurring in part and concurring in judgment)); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 1301 (2000) (rejecting Food and Drug Administration ("FDA") interpretation of its enabling statute to allow it to regulate tobacco, concluding that the statutory text and overall context reflected unambiguous Congressional intent that FDA not regulate tobacco, and cautioning that courts "must be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency.")

Applying these Supreme Court principles to the case at hand, if the practice of law was to be covered by the GLBA, thus altering a more than one-hundred year-old scheme of close state supervision and regulation of client confidentiality matters, Congress would have expressly stated its intention to do so. Instead, what is clear from the Act is that Congress did not intend it to cover the practice of law.[6]

The intent of Congress is clear because the GLBA is neither silent nor ambiguous as to the definition of "financial institution," and this definition says nothing about the practice of law, law firms, or lawyers.[7] The Act defines "financial institution" by reference to Section 4(k)

---

[6] The rule of statutory construction advanced in this brief – that Congress does not "hide elephants in mouseholes" – complements and reinforces the constitutionally-derived "plain statement" rule articulated in the New York State Bar Association's brief. *See* Mem. of the New York State Bar Association in Opp'n to the FTC's Mot. to Dismiss, *New York State Bar v. FTC* (D.D.C. filed Sept. 16, 2002), at 22-28; *see also* Plf.'s Surreply Mem., *New York State Bar v. FTC* (D.D.C. filed Nov. 27, 2002), at 2-4.

[7] Nor is this analysis altered by the fact that, as the FTC points out, Congress explicitly excluded from the definition of "financial institution" the Federal Agricultural Mortgage Corporation, entities regulated by the Commodity Futures Trading Commission, and certain secondary market institutions. *See* Mot. to Dismiss at 10-11 (citing 15 U.S.C. § 6809(3)). The circumstances of attorneys engaged in the practice of law and the expressly excluded entities are

of the BHCA.  *See* 15 U.S.C. § 6809(3)(A).  Section 4(k) of the BHCA, in turn, lists eight

"activities that are financial in nature."  *See* 12 U.S.C. § 1843(k)(4).  Not one of the eight

enumerated activities involves the practice of law.

Section 4(k) of the BHCA also defines an "activity that is financial in nature" as

any activity determined, by order or regulation of the FRB, to be "so closely related to banking

or managing or controlling banks as to be a proper incident thereto."  12 U.S.C. § 1843(k)(4)(F).

The FRB regulation describing activities that are properly incident to banking is commonly

known as "Regulation Y."  As discussed in more detail below, it is Regulation Y that the FTC

misinterprets in its effort to stretch the GLBA to cover the practice of law.  Yet Regulation Y,

and by implication, the GLBA, is no less clear in defining "financial institutions."  The

regulation contains a laundry list of "non-banking activities" that are nonetheless deemed

"proper[ly] incident" to banking, such as those related to extending credit and loan servicing,

collection agency services, credit bureau services, asset management services, real estate

settlement services, financial or investment advisory services, and securities brokerage services.

*See* 12 C.F.R. § 225.28 (2002).  Nowhere does Regulation Y mention the practice of law.

Thus, where a particular service was intended to be covered by the statute, it is

plain from the definition of "financial institution."  For example, as noted above, Regulation Y

expressly states that "credit bureau services" are among those "proper[ly] incident" to banking.

Accordingly, such services are covered under GLBA, and for this reason, the D.C. Circuit made

short work of a credit bureau's protest that it was not a "financial institution" subject to GLBA.

---

completely different.  Unlike practicing lawyers, these excluded entities are unquestionably
"financial institutions."  Congress therefore had to explicitly exclude them to prevent them from
being covered by GLBA.  Logically, no explicit exclusion of the practice of law appears because
Congress never intended the term "financial institution" to cover the practice of law in the first
place.

*See Trans Union, LLC v. FTC*, 295 F.3d 42, 48 (D.C. Cir. 2002) (because credit bureau services are within Regulation Y's definition of services "so closely related to banking or managing or controlling banks as to be a proper incident thereto," court concluded that credit bureau was covered by GLBA) (internal quotation marks omitted), *aff'g Individual Reference Servs. Group, Inc. v. FTC*, 145 F. Supp. 2d 6 (D.D.C. 2001) ("IRSG"), *cert. denied*, ___ U.S. ___, 122 S. Ct. 2386 (2002).

## 2. The enumerated exceptions to GLBA's disclosure provisions demonstrate that the Act does not cover the practice of law

In assessing whether Congressional intent is clear from the text of the statute, reviewing courts must also "interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Brown & Williamson*, 529 U.S. at 133, 120 S. Ct. at 1301 (citations and internal quotation marks omitted). It follows that an agency's interpretation does violence to the statutory text where the interpretation creates "disharmony" by rendering part of the statute nonsensical or superfluous. *See Qi-Zhou v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) (it is an "endlessly reiterated principle of statutory construction . . . that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage.").

Considering the GLBA as a whole, the Section 502(e) exceptions to the Act's disclosure prohibitions provide further textual evidence that the GLBA does not cover the practice of law. *See* 15 U.S.C. § 6802(e). Specifically, Section 502(e) lists a number of circumstances in which a "financial institution" is authorized to disclose nonpublic personal information to a third party without giving the customer the notice and opportunity to "opt out" otherwise required by GLBA. These exceptions *permit* a financial institution to disclose confidential client information for *any* of the following reasons:

- 14 -

(1)    to protect the confidentiality or security of the financial institution's records;
(2)    for required institutional risk control or for resolving consumer disputes or inquiries;
(3)    to persons holding a legal or beneficial interest relating to the consumer;
(4)    to persons acting in a fiduciary or representative capacity on behalf of the consumer;
(5)    to provide information to insurance rate advisory organizations, persons assessing compliance with industry standards, the financial institution's attorneys, accountants or auditors;
(6)    to respond to summons or other requests from authorized government authorities;
(7)    pursuant to the Fair Credit Reporting Act, to a consumer reporting agency or from a consumer report reported by the consumer reporting agency;
(8)    in connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit.

*See* 15 U.S.C. § 6802(e).

It is plain from an examination of this list of exceptions that Congress did not have lawyers in mind at all when crafting the GLBA. Each exception is addressed, in purpose and effect, to apply not to the practice of law, but to non-lawyer financial service entities that must disclose customer information as a routine function of carrying out transactions for their customers. Each of the listed exceptions permits disclosure of confidential information to third parties in situations where lawyers would be explicitly prohibited from doing so by state ethics rules, regardless of the GLBA exceptions.

The legal significance of this list cannot be ignored. It is not possible to harmonize Congress's enactment of these exceptions with an intent to cover lawyers, for one would be forced to conclude either that the list authorizes lawyers to make disclosures that would otherwise be prohibited by state ethics rules, in essence preempting state laws that provide greater privacy protections than GLBA, or that the exceptions are utterly superfluous. The former cannot be the case because GLBA explicitly provides that it is not inconsistent with, and thus will not preempt, state laws providing greater protection than GLBA. *See* 15 U.S.C. § 6807. The latter, of course, cannot be the case because it would render the exceptions superfluous.

- 15 -

Thus, the only logical conclusion is that Congress did not intend the practice of law to be covered by GLBA.

### 3.    The practice of law is not closely related to banking

In the face of unambiguous statutory text that denies it leeway to interpret, and does not support its interpretation in any event, the FTC presses on with its only real textual argument: that since real estate settlement, debt collection, and tax planning and preparation services are included in Regulation Y, and lawyers as well as financial institutions can provide such services, all lawyers who have significant practices with individual clients in any of these areas must be "financial institutions" too. *See* Mot. to Dismiss at 3, 8.

The government's argument should be rejected for the following reasons:

First, the FTC misperceives the nature of the activities included by the FRB in Regulation Y, and the purpose of the regulation. These services (*e.g.*, real estate settlement services) were included because they were deemed properly incident to *banking*. Having concluded that "banking and commerce should remain separate," Congress, in the BHCA, generally prohibits bank holding companies from engaging in non-banking activities or owning shares in companies engaged in such activities unless the activities have been found by the FRB to be "so closely related to banking as to be a proper incident thereto." *See Nat'l Courier Ass'n v. Bd. of Governors of the Fed. Reserve Sys.*, 516 F.2d 1229, 1232-33 (D.C. Cir. 1975) (quoting S. Rep. No. 1084, 91st Cong., 2d Sess. 12, *reprinted in* 1970 U.S.C.C.A.N. 5519, at 5531, and 12 U.S.C. § 1843(c)(8) (1970)). The FRB judges whether bank holding companies or their affiliates may properly engage in particular non-banking activities by considering whether the activity is "closely related to banking" and also whether performance of the proposed activities will yield public benefits that outweigh possible adverse effects. *See Nat'l Courier*, 516 F.2d at 1237.

With its statutorily mandated focus on whether particular activities are "closely related to banking," the FRB was obviously not authorizing bank holding companies to provide legal advice or legal services when it permitted them to engage in real estate settlement, tax preparation and planning, debt collection and other financial activities. Thus, while the same services might also be performed as an incident to legal services, they are included in Regulation Y only because – and only to the extent – they have been deemed to be an incident of banking. As would be expected, the FRB's rulemakings and adjudications approving these activities contain no mention of legal services and suggest that the FRB had in mind only the non-law practice aspects of the services approved in Regulation Y.

For example, in approving the inclusion of real estate settlement services in Regulation Y, the FRB emphasized that such services were included because they were customarily performed by banks as part of their business of making and servicing loans. These services were described by the FRB as including escrow and distribution services under land installment sales contracts, preparing documentation required to close loans in accordance with federal and state lending requirements, and title insurance activities. *See Norwest Corp.*, 76 Fed. Res. Bull. 1058, 1059 (1990); *see also* Bank Holding Companies and Change in Bank Control (Regulation Y), Final Rule, 62 Fed. Reg. 9290, 9305 (Feb. 28, 1997) ("A new category has been added [to Regulation Y] authorizing activities that the Board determines to be usual in connection with making, acquiring, brokering or servicing loans or other extensions of credit. . . . [T]he category lists a number of activities that the Board has previously determined are related to credit extending activities, including, by way of example, credit bureau, collection agency, appraisal, asset management, check guarantee, and real estate settlement activities."). Since the practice of law does not entail the making and servicing of consumer loans, it follows that the

FRB could not have intended to cover the practice of law when it included real estate settlement services in Regulation Y.

Second, the practice of law could not have been approved for inclusion in Regulation Y because banks and bank holding companies are specifically prohibited from practicing law. When it approved tax preparation and planning services for inclusion in Regulation Y, the FRB observed that these services were closely related to banking because banks were already providing tax services for customers through banks' trust and financial counseling departments, *see Bancorp Hawaii, Inc.*, 71 Fed. Res. Bull. 168, 169 (1985), and that such services were also routinely performed by banks when analyzing business transactions they financed and providing advisory services. Bank Holding Companies and Change in Bank Control; Expanded List of Permissible Nonbanking Activities, 51 Fed. Reg. 39,994 (Nov. 4, 1986) ("The Board has concluded that tax planning is a specialized form of financial advice, akin to the provision of financial feasibility studies on specific projects, which the Board has previously approved." (citation omitted)). In its rulemaking, the FRB took explicit note of comments by the public that tax planning advice could stray into the unauthorized practice of law, and the Board specifically instructed that "[w]ith respect to the unauthorized practice of law, the Board notes that the activity must be conducted in strict accordance with the applicable local law, and that *the activity would therefore be prohibited in those jurisdictions that specify the activity as the practice of law*." *Id.* at 39,998 (emphasis added). For this reason, the *Bank Holding Company Supervision Manual*, prepared by the FRB to guide inspections of bank holding companies and non-banking affiliates, requires bank examiners to "[d]etermine if the client has a written legal opinion on file certifying that [the institution's tax planning and tax

- 18 -

preparation services are] not considered the practice of law. *Bank Holding Company Supervision Manual* § 3130.6.2 (June 1998).

These statements by the FRB are powerful evidence that none of the financial services described in Regulation Y were intended to include the practice of law. The FRB expressly recognized that it could not include in Regulation Y any activity that involved the practice of law.

Third, when lawyers apply legal skill and judgment in providing real estate, tax or debt collection advice, they are practicing law -- they are not engaging in activities closely related to banking. For example, the Supreme Court of the State of Washington has defined the practice of law as "the application of legal principals and judgment with regard to the circumstances or objectives of another entity or person(s) which require knowledge and skill of a person trained in the law." *See* Wash. S. Ct. R. 24(a).[8] Thus, when lawyers practice real estate, tax or debt collection law, they are involved in activities that are markedly different from the "financial" activities the FRB has said are closely related to banking.

Furthermore, the nature of the attorney-client relationship distinguishes the practice of law from commercial relationships such as the financial institution-customer relationship. As has been repeatedly stated in judicial decisions going back two hundred years and more, a lawyer owes a client the highest fiduciary duty of loyalty. *See, e.g., Stockton v. Ford*, 52 U.S. 232, 247 (1850) ("There are few of the business relations of life involving a higher trust and confidence than that of attorney and client . . . ."). It is not merely a duty to refrain

---

[8] Almost all states have statutes defining the practice of law. In addition, in studying the development of a model definition of the practice of law, an ABA Task Force recently drafted a proposal that defines the practice of law as "the application of legal principles and judgment with regard to the circumstances or objectives of a person that require the knowledge and skill of a person trained in the law. . . ." *See* John Gibeaut, *Another Try: ABA Task Force Takes a Shot at Defining the Practice of Law*, ABA Journal (Dec. 2002), at 18-19.

from commercial exploitation of the client's identity and financial situation.  It is a positive duty to exercise care and concern for the client in matters within the scope of the representation.

Moreover, state ethics rules require a lawyer to be "proactive" in the representation of clients.  A lawyer must proactively seek relevant information concerning a client; merely taking down information supplied by the client will not fulfill the lawyer's duty of competence.  *See* Rule 1.1 of the ABA Model Rules of Professional Conduct ("Model Rules").[9] The lawyer must pursue the client's objectives, not those of the lawyer, as provided in Model Rule 1.2(a).  The lawyer must counsel the client about the requirements that the legal system has imposed on the client, as stated in Model Rule 1.2(d).  The lawyer must communicate with the client, Model Rule 1.4, and avoid conflicts of interest.  The lawyer must exercise zeal in litigation and wise counsel in transaction matters.  *See* Preamble to the Model Rules ¶ 2.

None of these proactive responsibilities of lawyers are legal obligations of "financial institutions."  On the contrary, financial institutions deal with their "customers" to make money in market transactions in the various lines of financial business.  In contrast, a lawyer as a fiduciary is something like a guardian regarding the affairs of a client involved in the matters that a lawyer undertakes.

When lawyers provide legal advice, prepare documents involving legal skill and judgment, and represent their clients before agencies and courts – exercising the duties of loyalty, competence and care imposed by state ethics rules – there is no doubt that they are practicing law.  The practice of law is an activity that is much different from the financial

---

[9] The Model Rules were promulgated in 1983.  They augmented and supplanted the Model Code of Professional Responsibility ("Model Code") which was promulgated by the ABA in 1970.  Most states have adopted the Model Rules.  Certain states have retained their versions of the Model Code, sometimes amending them to incorporate provisions of the Model Rules.

- 20 -

activities that the FRB has said are closely related to banking. When they practice law, lawyers are not "financial institutions" subject to the privacy provisions of the GLBA.

Finally, it is important to make clear that the ABA's argument is not based on status or professional credentials, but rather, the nature of the activity in question. The ABA does not contend that an individual engaged in activities not customarily a part of the practice of law (*e.g.,* providing loan brokerage services, or providing advice on securities investments for a fee), who happens to be a licensed lawyer, should be treated any differently than other entities providing such services. However, where the activity is one that historically has been part of the legal services performed by lawyers and regarded as the practice of law – like the practice of real estate, tax and debt collection law – the GLBA does not and should not apply.

### B.   The Purposes Of The GLBA Reflect That It Has Everything To Do With The Financial Services Industry And Nothing To Do With The Practice Of Law

If examination of the text of GLBA leaves any doubt that the statute was not intended to cover the practice of law, it is dispelled by the purposes of the statute, which reflect that GLBA has everything to do with the financial services industry and nothing to do with the practice of law. *See Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454-55, 109 S. Ct. 2558, 2566 (1989) (admonishing reviewing courts to "remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.").

### 1.   The Overall Purposes of the GLBA

As the FTC has acknowledged in this and a related case, Congress enacted the GLBA "to permit the affiliation of banks, securities firms, insurance companies and other financial institutions with each other," Mot. to Dismiss at 2 (citation omitted); "to enhance

competition in the financial services industry," *see* FTC's Reply Mem. in Support of Defendant's Mot. to Dismiss, *New York State Bar v. FTC*, (dated Nov. 18, 2002), at 20 (citation omitted); and "to allow domestic financial services firms to better compete globally." *Id.* The purpose of the Act's privacy provisions in particular is "to protect against unauthorized sharing of customer's financial information which would otherwise be marketed by financial institutions." *Id.* (citations omitted).

These purposes demonstrate that the GLBA could not have been intended to cover lawyers engaged in the practice of law. Congress did not set out to help U.S. lawyers compete globally, or help lawyers affiliate with banks, securities firms, or insurance companies, and there is certainly nothing in the legislative history indicating otherwise. Moreover, lawyers are precluded by state law from "sharing" and "marketing" client information. Thus, the overall purposes of the GLBA have no application or relevance to the practice of law.

### 2.    The Policy of the GLBA's Privacy Provisions

The stated policy of the Title V privacy provisions of the GLBA is that "financial institution[s]" have a duty to protect the "privacy," "security" and "confidentiality" of customers' nonpublic personal information. 15 U.S.C. § 6801(a). However, the privacy, confidentiality and security of attorney-client communications are already protected by state law. As articulated in Paragraph 24 of the ABA's Complaint, most states base their confidentiality rules on Model Rule 1.6(a), which provides that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)." Evident from the language of this rule is the fact that it protects from disclosure a far broader range of information than GLBA. Under Model Rule 1.6(a), *all "information*

*relating to the representation of a client*" is protected from disclosure subject to very limited

exceptions.[10]  In contrast, the GLBA protects only "personally identifiable financial

information."

Since lawyers, unlike "financial institutions," are already subject to strict

limitations on the disclosure of information regarding their clients that far exceed those of the

GLBA, the FTC's interpretation, which would impose the GLBA's privacy requirements on

lawyers, serves no general or specific purpose.  For this reason, in addition to the unambiguous

language of the GLBA, Congress could not have intended the GLBA to cover lawyers engaged

in the practice of law.

In its Motion to Dismiss, the FTC argues that the imposition of the GLBA privacy

requirements on lawyers would serve a significant statutory goal or policy because state bar rules

---

[10] RULE 1.6: CONFIDENTIALITY OF INFORMATION

(a)  A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

(b)  A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

(1)  to prevent reasonably certain death or substantial bodily harm;
(2)  to secure legal advice about the lawyer's compliance with these Rules;
(3)  to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or
(4)  to comply with other law or a court order.

A few states based their confidentiality rules on the Model Code.  The Disciplinary Rules set forth under Canon 5 of that Code contain essentially similar rules on confidentiality and disclosure.  *See* Compl. ¶ 24.  States, such as California, whose rules are not based on ABA Model Rule 1.6 or the Rules under Canon 5 of the Model Code, nonetheless have strictures in place that prohibit attorneys from revealing "confidences" or "secrets," generally subject to the same limited categories of exceptions provided for in ABA Model Rule 1.6(a).  *Id.* (citing Cal. Bus. & Prof. Code § 6068(e) (West 1990) ("It is the duty of an attorney to . . . maintain inviolate the confidences, and at every peril to himself or herself to preserve the secrets, of his or her client")).

- 23 -

do not uniformly require lawyers to send *notices* to clients concerning lawyers' privacy policies, which may "provide useful information" if a client "wants to compare the privacy policies of lawyers to those of other financial institutions." Mot. to Dismiss at 17. These purported benefits, however, have nothing to do with the purpose or policy of the GLBA, and in any event, would not help clients make the kinds of choices that imposition of such requirements on financial institutions were intended to effectuate.

       In the first place, Congress did not declare the goals of GLBA to be "mailing out privacy notices" to consumers or making possible "comparison shopping" between lawyers and financial institutions. In fact, as this Court has already recognized, the privacy provisions of the GLBA were enacted out of concern that allowing banks, securities firms, insurance companies and other financial institutions to affiliate and share information with one another would "exacerbate the concerns of consumers regarding the dissemination of personal financial information." *IRSG*, 145 F. Supp. 2d at 17-18. Affiliated banks, insurance companies and securities firms would "have the capacity to know more about an individual's spending habits than ever before, and could use this information for many purposes, including unwanted marketing and solicitation." *Id.* at 18 (citing H.R. Rep. No. 106-74, pt. 3, at 106-07 (June 15, 1999)). Congress accordingly decided to "balance these interests" by giving consumers the ability to choose whether and how their personal information will be shared by financial institutions. *Id.* Only banks, securities firms, insurance companies and other members of the financial services industry can benefit from what essentially amounted to a trade-off between allowing affiliation of financial service providers and protecting the privacy of consumers' financial information. It is difficult to believe, as the FTC does, that Congress would impose the

burden associated with such a trade-off upon individuals and entities that cannot take advantage of any of the benefits. [11]

In addition to not advancing the stated goals or policies of the GLBA, the FTC's interpretation will surely create unnecessary confusion and mistrust. Practically every layperson in America knows at least one thing about attorneys' ethical obligations – that what a client says to his or her attorney cannot be disclosed by the attorney. In light of this common knowledge, a new requirement that practicing lawyers send notices to clients "describing the categories of information that are collected and disclosed" by the lawyer, "the categories of nonaffiliated third persons" to whom clients' information may be disclosed, and the lawyer's "policies . . . regarding protecting the confidentiality and security" of clients' information, *see* Mot. to Dismiss at 4, will understandably confuse clients about the role of the more stringent privacy protections they enjoy by virtue of state law.

The FTC disputes whether client confusion will result from these notices and presumes to explain its view of how the agency's self-styled "complementary" regulatory scheme should be explained to clients. Mot. to Dismiss at 20. However, the dispute the FTC raises as to client confusion is a factual one, not properly raised on a motion to dismiss. At this stage, the court must accept as true the ABA's factual allegations, including its assertion that the GLBA privacy notices will create client misunderstanding and confusion.

---

[11] The FTC also maintains that coverage of lawyers would serve a statutory purpose because some states do not fully protect against disclosure of clients' identity and the fact of representation, whereas GLBA does. *See* Mot. to Dismiss at 18. The FTC's argument is wrong on the law because it confuses the attorney-client privilege with the broader duty of confidentiality specified in Model Rule 1.6. The duty of confidentiality protects client identity, the fact of representation, the "matter" involved, and the objectives the client seeks to achieve. However, all of the cases cited in the FTC's brief refer to exceptions to the *attorney-client privilege*. In point of fact, there are no circumstances in which the GLBA affords greater protection than the rules to which lawyers are already subject.

In conclusion, statutory interpretations that do not serve the purpose of the statute, or any general purpose for that matter, have been rejected by courts. *See, e.g., Int'l Bhd. Of Teamsters v. Daniel*, 439 U.S. at 570, 99 S. Ct. at 802 (rejecting a statutory interpretation applying the Securities Acts of 1933 and the Securities Exchange Act of 1934 to pension plans because, in light of coverage of these plans by another statutory scheme, the interpretation "serves no general purpose") (citations omitted). Since the FTC's interpretation of the GLBA does nothing to advance the stated purposes and policies of the statute, the interpretation cannot be sustained.

### C.    The Legislative History Of The GLBA Likewise Reflects That The Statute Was Not Intended To Cover The Practice Of Law

The text and purpose of the GLBA make clear that the statute was not intended to be applied to the practice of law. If there is any remaining ambiguity, however, it is to be resolved by the statute's legislative history.

A thorough review of the legislative history reveals that there is not the slightest indication that the practice of law was to be covered by the GLBA. On the contrary, the only references to lawyers in the legislative history indicate that Congress had the opposite intention.

The singular focus of the statute's legislative history is on the financial services industry, specifically the desire of Congress to "enhance competition in the financial services industry by providing a prudential framework for the affiliation of banks, securities firms, insurance companies and other financial service providers. . . ." H.R. Conf. Rep. No. 106-434, at 245 (1999), *reprinted in* 1999 U.S.C.C.A.N. 245, 245. It was against this backdrop that the GLBA's privacy provisions were enacted. Congress acknowledged the linkage between permitting affiliation of financial firms and the need to protect privacy when it observed that:

> As a result of the explosion of information available via electronic services such as the Internet, as well as the expansion of financial institutions through affiliations and other means as they seek to provide more and better products to consumers, the privacy of data about personal financial information has become an increasingly significant concern of consumers.

H.R. Rep. No. 106-74, pt. 3, at 106-07 (June 15, 1999).

Similarly, in *IRSG*, this Court recognized that the privacy provisions were included in the GLBA because "Congress realized that such a structure [of affiliated financial service firms] could exacerbate the concerns of consumers regarding the dissemination of personal financial information," by giving affiliated firms "the capacity to know more about an individual's spending habits than ever before." *IRSG*, 145 F. Supp. 2d at 18.

The legislative history therefore demonstrates that Congress included the privacy provisions in the GLBA because it was concerned about the effects of permitting banks, securities firms and insurance companies to affiliate with one another. The activities of lawyers and the practice of law had absolutely nothing to do with any of these issues or concerns. Accordingly, the FTC's interpretation of the Act is at odds with the legislative history of the Act.

Significantly, the only references to lawyers or the practice of law in the legislative history show that Congress did *not* intend to apply the privacy provisions of the GLBA to practicing lawyers. In approving the GLBA Conference Report, two statements were made that provide powerful evidence that Congress had no difficulty recognizing the distinction between financial institutions and lawyers, and that the GLBA's privacy provisions were clearly not meant to apply to the practice of law:

> I think most of us have this vague concept that when we are dealing with our bank, when we are dealing with our insurance company, when we are dealing with our stockbroker, that stuff is confidential. Isn't it? *Isn't that similar to talking with your lawyer about a legal problem* or your doctor about a medical problem or

> even sharing with your local pastor, your rabbi, your minister, your
> religious advisor?

145 Cong. Rec. S13891 (daily ed. Nov. 4, 1999) (statement of Sen. Bryan) (emphasis added).

> Paramount to our freedom is the right to privacy; to be left alone
> and to be secure in the belief that our business is just that, ours and
> no one else's. When we do share our personal business
> information with others, it is with the real and reasonable
> expectation that it remains our property. *When dealing with our
> doctor or lawyer we know that the communication is privileged.*
> Traditionally, when providing information to our banker or
> insurance agent or our stockbroker, we similarly believed that the
> information provided was specific to that transaction.

145 Cong. Rec. S13908 (daily ed. Nov. 4, 1999) (statement of Sen. Burns) (emphasis added).

These statements highlight the distinction between those entities Congress clearly

meant to be governed by GLBA – banks, insurance companies, securities firms, credit card

companies, credit bureaus and the like – and those Congress did not intend GLBA to cover –

lawyers, physicians, etc., because the latter are already subject to existing and well-understood

confidentiality regimes. By drawing the distinction in this simple, common sense way, these two

Members of Congress firmly and eloquently slam the door on the FTC's interpretation of the

GLBA.[12]

---

[12] The FTC has tried to divert attention from these statements by suggesting that lawyers
were not "the primary focus of the act." *See* FTC Mot. to Dismiss, *New York State Bar v. FTC*,
(filed July 1, 2002) at 9 n.7. FTC also argues that Congress knew how to exempt entities from
coverage but did not do so for lawyers. *See* Mot. to Dismiss at 10-11. These arguments
presuppose that Congress had lawyers in mind in the first instance (which is obviously not the
case) and somehow communicated the intention to regulate lawyers to the FTC while failing to
make this intention clear to everyone else in either the text or legislative history of the statute. A
statutory scheme of this nature of would, of course, not pass constitutional muster. *See
Timpinaro v. SEC*, 2 F.3d 453, 460 (D.C. Cir. 1993) (statute is unconstitutionally vague if "men
of common intelligence must necessarily guess at its meaning") (quotation marks and citation
omitted).

**D.      Conclusion – The FTC Opinion Letter Must Be Set Aside**

The text, purpose and legislative history of the Act unambiguously point to one conclusion:  Congress did not intend the GLBA to cover the practice of law.  Because this Court must give effect to the unambiguously expressed intention of Congress, the FTC's interpretation of the statute cannot be upheld.

**III.    THE FTC'S OPINION LETTER LACKS PERSUASIVE POWER AND SHOULD BE ACCORDED NO WEIGHT BY THE COURT**

Even if this Court concludes that the intent of Congress was not clear from the text, purpose and legislative history of the GLBA, no weight should be accorded the FTC's interpretation of the statute.  As explained above, when a statute is ambiguous, a statutory interpretation contained in an agency opinion letter must be assessed under the standard articulated by the Supreme Court in *Christensen*.  Specifically, an opinion letter is "entitled to respect," but only to the extent the agency's interpretation has "power to persuade."  529 U.S. at 587, 120 S. Ct. at 1663 (quoting *Skidmore*).

The factors relevant to determining the persuasive power of an agency opinion letter include "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements."  *Mead*, 533 U.S. at 228, 121 S. Ct. at 2172 (quoting *Skidmore*).  The FTC staff's opinion letter fails each element of this test – it evidences a lack of thorough consideration, its reasoning is flawed, and it is inconsistent with earlier and later pronouncements.  It is accordingly entitled to no respect from this Court.  Therefore, this Court is free to substitute its own judgment for that of the FTC staff and it should adopt the far more plausible and reasonable interpretation of the GLBA – that it does not cover the practice of law.  *See, e.g., Christensen*, 529 U.S. at 587-88, 120 S. Ct. at 1662-63 (finding an

agency opinion letter unpersuasive, the Supreme Court then opined on the most reasonable interpretation of the statute). [13]

### A.    Lack Of Thorough Consideration

An examination of the FTC's opinion letter, attached as Exhibit A, reveals that the agency understood that the ABA questioned the propriety of applying the GLBA to attorneys engaged in the practice of law.  However, the FTC's opinion letter contains no discussion whatsoever of this critical issue.  In light of its complete failure to discuss the fundamental issue at hand, the opinion letter can hardly be characterized as "thorough," and the agency cannot reasonably expect this Court to endorse it.

### B.    Flawed Reasoning

To be accorded respect by the Court, the FTC's opinion letter must also evidence valid reasoning on the agency's part in reaching its decision.  Yet the letter offers no reasoning at all on the question of whether lawyers engaged in the practice of law are covered by GLBA.  After "recogniz[ing] the issues" raised by the ABA "regarding the application of the GLB Act to attorneys at law," the FTC simply says nothing else about this key issue.  *See* Exhibit A.

The FTC's litigation team claims that the opinion letter provided an appropriate "brief statement of the grounds for denial" of ABA's challenge.  Mot. to Dismiss at 23.  On the contrary, however, by failing to offer any reasoning, let alone a valid rationale, for its decision, the FTC's opinion letter "cross[ed] the line from the tolerably terse to the intolerably mute."

---

[13] The result would be the same even under the higher standard of deference accorded agency decisions under *Chevron*.  As explained in the preceding section, the FTC's interpretation of GLBA is unreasonable in light of the text, purpose and legislative history of the statute. Unreasonable statutory interpretations are not entitled to deference under *Chevron*.  *See Independent Ins. Agents of Am., Inc. v. Hawke,* 211 F.3d 638, 643 n.2 (D.C. Cir. 2000) (an unreasonable statutory interpretation would not pass muster under *Skidmore* or *Chevron*).

*Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970) (citations omitted). In the absence of valid reasoning there is, of course, nothing to which the Court may accord respect.

### C.  Inconsistency

The FTC's opinion letter is flatly inconsistent with prior and subsequent pronouncements by the agency concerning the availability of exemptions from the GLBA's privacy requirements.

#### 1.  The FTC's earlier exemption of higher education institutions

While the FTC in its April 8, 2002 opinion letter was telling the ABA that the agency lacked legal authority to grant an exemption from the GLBA's notice requirements, the FTC had already granted a similar exemption request from higher education institutions. *See* Privacy of Consumer Financial Information, Final Rule, 65 Fed. Reg. 33,646, 33,648 (May 24, 2000). Apparently realizing the inconsistency of its actions, the FTC's brief attempts in a lengthy footnote to justify the exemption for higher education. *See* Mot. to Dismiss at 22 n.10. As discussed *infra* at 36-39, this attempt to explain away the inconsistency is unpersuasive. The rationale employed by the agency to justify the exemption for higher education, *i.e.*, that higher education institutions are subject to a legal regime providing the same if not greater privacy protections than the GLBA, applies with equal force to justify exemption of practicing lawyers, who are likewise subject to laws providing greater privacy protections than GLBA.

#### 2.  The FTC's later admission of inherent exemption authority

Equally important, even though the FTC, in its opinion letter, disclaimed authority to exempt the practice of law from the GLBA, the FTC litigation team now asserts that the agency

has "residual exemption authority," Mot. to Dismiss at 15, 19, and "inherent *de minimis*" authority. *Id.* at 16, 19, 22. Thus, the letter is inconsistent with the FTC's stated position in this case.

The FTC's litigators may try to explain away the opinion letter's inconsistency with the FTC's later actions by pointing to the letter's discussion of "express" authority to grant exemptions rather than the residual or *de minimis* authority that purportedly justified the higher education exemption. However, the matter at issue for the ABA was the availability of an exemption for lawyers or law practice on whatever ground. The FTC's focus in its opinion letter on its lack of express exemption authority, while failing to acknowledge that it actually had inherent exemption authority, was disingenuous as well as fundamentally inconsistent with its position now.

In sum, the opinion letter's inconsistency with the FTC's earlier grant of an exemption to higher education institutions, and with its later admission of inherent authority to exempt, renders the letter unworthy of any respect from the Court.

### D.    The Court Should Adopt The Most Plausible Reading Of The GLBA

Once the Court concludes that the FTC opinion letter is not entitled to deference, it is free to adopt its own view. In this regard, the ABA respectfully suggests that the only plausible reading of the GLBA is that it does not apply to the practice of law. If Congress had meant to cover lawyers or the practice of law, it would have said so. As the Supreme Court said in *ATA*, Congress does not "hide elephants in mouseholes." 531 U.S. at 468, 121 S. Ct. at 910.

The policy and purpose of the GLBA are clearly geared toward protecting the privacy of consumers in transactions with banks, securities firms, insurance companies and the like that were freed by GLBA to affiliate with one another. And the legislative history of the Act

- 32 -

highlights the fact that Congress did not intend to federally regulate the confidentiality aspects of attorney-client relationships – on the contrary, it was the attorney-client confidentiality regime that Congress held out as *an example* to be followed by the financial services industry. *See infra* at 28.

The interpretation advocated by the ABA is not merely the most plausible one, it is the *only* plausible interpretation of the GLBA. This Court should therefore hold that the privacy provisions of the GLBA do not apply to lawyers engaged in the practice of law.

## IV.     THE FTC'S OPINION LETTER, WHICH ASSUMES WITHOUT ANY EXPLANATION THAT LAWYERS ENGAGED IN THE PRACTICE OF LAW ARE COVERED BY THE GLBA, CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION

An examination of the FTC's opinion letter, attached as Exhibit A, reveals that it contains no discussion whatsoever of the fundamental issue of whether lawyers are in fact covered by the GLBA. There was no discussion of how it arrived at its statutory interpretation, no discussion of the facts considered by the agency, and no discussion of policy considerations. In short, there is no indication that the agency engaged in reasoned decisionmaking by taking a "hard look" at the question of whether the practice of law should be covered by the GLBA.

Under these circumstances, the FTC's opinion letter constitutes arbitrary and capricious agency action and should be vacated. *Panhandle Eastern Pipe Line*, 890 F.2d at 439 (requiring agencies to employ "reasoned decisionmaking" by "taking a hard look at the salient problems"); *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S. Ct. at 823-24, (decision must be "based on a consideration of the relevant factors"); and *State Farm*, 463 U.S. at 48-49, 103 S. Ct. at 2869 (agency must articulate a satisfactory explanation for its decision).

The FTC appears to ignore all of this, stating that its decision must be upheld "if the agency's path may reasonably be discerned." Mot. to Dismiss at 23 (citations omitted). The

FTC's path, of course, cannot be discerned where there simply is no explanation. The FTC's belated effort to explain its decision to this Court is, of course, nothing more than "appellate counsel's *post hoc* rationalizations for agency action" that the Supreme Court deemed unacceptable in *State Farm*. 463 U.S. at 50, 103 S. Ct. at 2870 ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (citations omitted). A decision that fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made" must be struck down as arbitrary and capricious. *State Farm*, 463 U.S. at 50, 103 S. Ct. at 2870 (citations and internal quotation marks omitted) (rejecting action for which agency "submitted no reasons at all").

## V.  THE FTC'S OPINION LETTER, WHICH REFUSED TO EXEMPT LAWYERS ENGAGED IN THE PRACTICE OF LAW, CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION

### A.  The FTC Arbitrarily And Capriciously Failed To Consider Its Residual Or Inherent Exemption Authority

As it acknowledged in its opening brief, the FTC has "residual" or "inherent *de minimis*" authority to exempt if inclusion of the practice of law would "add little or nothing to the accomplishment of the statutory goals" of the GLBA. *See* Mot. to Dismiss at 15-16. The availability of residual or inherent exemption authority is clearly an important aspect of the exemption issue, especially since the FTC contends it is the only available basis for granting an exemption to GLBA's privacy notice requirements.[14] However, in responding to the ABA's request, the FTC's opinion letter did not discuss or otherwise take into account the agency's

---

[14] Prior to the ABA's request, the FTC had already exercised its "inherent" authority by exempting the higher education industry. *See* FTC's Opp'n to Plf.'s Mot. for Leave to File Surreply or, in the Alternative, Motion for Leave to File Response to Plf.'s Surreply Mem., *New York State Bar v. FTC*, (filed Dec. 11, 2002), at 3 (explaining that the exemption for higher education institutions was granted under the agency's "inherent *de minimis* authority, which may be exercised where application of a statute would yield only trivial benefits.").

- 34 -

residual or inherent power to exempt. *See* Exhibit A. Nor did the letter consider whether inclusion of lawyers would advance the purposes of the Act. For these reasons alone, the letter constitutes arbitrary and capricious agency action. *See State Farm*, 463 U.S. at 43, 103 S. Ct. at 2866 (an agency action is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem").

> **B.      The FTC's Failure To Articulate A Satisfactory Explanation For Its Refusal To Exempt Renders Its Opinion Letter Arbitrary And Capricious**

As was the case with its decision that the practice of law is covered by the GLBA, the FTC did not articulate a satisfactory explanation for its refusal to exempt lawyers from the GLBA. *State Farm*, 463 U.S. at 43, 50, 103 S. Ct. at 2866, 2870 (citations and internal quotation marks omitted) (an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made"). The opinion letter merely observed in conclusory fashion that "there are significant questions as to the legal authority of the Commission to grant the exemption" requested by the ABA, and went on to opine that the FTC did not have "express" exemption authority with respect to the Section 503 notice provisions of the statute. *See* Exhibit A. No analysis was provided. No facts were discussed.

Such conclusory statements are not sufficient to meet the requirements of the APA. *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404-05 (D.C. Cir. 1995). For this reason alone, the FTC staff opinion letter should be vacated.

> **C.      The FTC's Exemption Of Higher Education Demonstrates That Its Refusal To Exempt The Practice Of Law Was Arbitrary And Capricious**

Perhaps the most striking evidence of the FTC's arbitrariness in this case is its treatment of an exemption request from the higher education industry that is analytically similar, if not identical, to the ABA's request. The inconsistent treatment of similar exemption requests

is grounds for reversal of agency action. *See, e.g., Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1224 (D.C. Cir. 1993) (an agency that arbitrarily grants an exception for some and not for others identically situated can "expect a successful challenge" to its action).

Several colleges and universities argued during the FTC's rulemaking that institutions of higher education were not "financial institutions" and thus were not subject to the GLBA. *See* Privacy of Consumer Financial Information, Final Rule, 65 Fed. Reg. 33,646, 33,648 (May 24, 2000). The FTC rejected this argument, so the higher education institutions requested an exemption in the alternative.[15] *See id.* The FTC agreed to exempt these institutions under its "inherent *de minimis* authority, which [it said] may be exercised where application of a statute would yield only trivial benefits." *See* FTC's Opp'n to Plf.'s Mot. for Leave to File Surreply or, in the Alternative, Motion for Leave to File Response to Plf.'s Surreply Mem., *New York State Bar v. FTC*, (filed Dec. 11, 2002), at 3. Specifically, the FTC decided that colleges and universities would be "deemed to be in compliance with the Commission's rule" – in essence, exempt from the GLBA privacy notice requirements – if the higher education institutions complied with the privacy provisions in the federal Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, and its implementing regulations, which govern the privacy of educational records including student financial aid records.

The FTC's decision refusing to exempt the practice of law while at the same time exempting higher education was both arbitrary and capricious. The exemption for higher education was premised on the fact that another set of laws was in place that provided equal, if not greater, protection for the information in question. As this Court knows, lawyers too are

_____

[15] The FTC concluded that higher education institutions met the GLBA's definition of "financial institution" because they are "significantly engaged in lending funds to consumers." 65 Fed. Reg. at 33,648.

subject to another strict set of laws governing client privacy that provide even greater protections than does the GLBA. Every single state has, and strictly enforces, laws and regulations that prohibit disclosure of a far broader range of client information, providing greater protection to clients than the GLBA. *See* Compl. ¶¶ 24-25.

The reasons offered by the FTC for its steadfast refusal to exempt the practice of law while it exempted higher education are supposed "distinctions" between state ethics rules and FERPA, the federal law protecting the privacy of education records. These reasons are unpersuasive.

First, the FTC claims that FERPA provides greater protection than state ethics rules because FERPA requires annual notices to students of their rights thereunder, suggesting that clients will not be aware of the attorney's duty to maintain confidentiality unless they receive a written notice. Mot. to Dismiss at 22 n.10. This is absurd. The public is keenly aware of the fact that attorneys are not permitted to disclose clients' information.[16] Moreover, the FTC's elevation of the privacy notice requirement above all else is unreasonable when dissemination of notices is not the stated purpose of GLBA's privacy provision, and strongly suggests that the FTC "has been blind to the nature of [its] mandate from Congress." *American Horse Prot. Ass'n v. Lyng*, 812 F.2d 1, 6 (D.C. Cir. 1987). Protection of personal information is the goal, and where another statutory regime is in place providing greater protection to clients' information than the GLBA it makes little sense to impose the GLBA's burdensome and expensive notice requirements on a sector of the economy when such notices do nothing to facilitate or expand protection of client information.

---

[16] As noted above, this common understanding regarding the confidentiality of clients' information was discussed in the legislative history of GLBA. *See supra* p. 28.

Second, the FTC staff appears to believe that FERPA is "better" than state ethics rules because FERPA imposes a "single federal uniform statutory regime." Mot. to Dismiss at 22 n.10. This position reflects very troubling disdain on the FTC's part for the carefully crafted attorney-client confidentiality rules of the 50 states and the historic role of the states in administering these rules and in regulating the attorney-client relationship. Indeed, as far as the ABA is aware, the FTC has lodged no complaint challenging the effectiveness of states' regulation of attorney-client confidentiality matters. This Court should not allow the FTC staff to substitute its hastily drawn and unsupported policy judgments for more than 100 years of very effective regulation by the states in the absence of a clear statutory mandate to do so.

Third, the FTC claims that FERPA provides even greater protection than GLBA (and by implication, greater protection than state ethics rules) presumably because FERPA protects information unless an individual "opts-in" by giving consent to disclosure, whereas the GLBA requires consumers to "opt-out" of disclosures to unaffiliated parties. *See* Mot. to Dismiss at 22 n.10. This presumption is erroneous because state ethics rules governing lawyers provide at least the same, and probably greater, protection than FERPA – a lawyer cannot disclose clients' information unless the client "opts-in" by giving consent to disclosure.[17] Moreover, compared to GLBA, state ethics rules also provide greater privacy protections

---

[17] The privacy of educational records is by no means inviolate. Institutions of higher education are required by statute, for example, to provide certain educational records, specifically those of foreign students, to government agencies such as the Immigration and Naturalization Service. *See* 8 U.S.C. § 1372. Other government agencies have been attempting to obtain routine access to educational records. *See* Dan Eggen, *FBI Seeks Data on Foreign Students: Colleges Call Request Illegal*, Washington Post, Dec. 25, 2002, at A1; *see also* 20 U.S.C. § 1232g(j) (Supp. 2002) (empowering the U.S. Department of Justice to seek an *ex parte* court order to collect, retain, disseminate and use education records in the possession of education institutions as part of an investigation or prosecution of terrorist activity). In contrast, no one would expect government agencies to be granted access, much less routine access, to lawyers' client files.

- 38 -

because the scope of protected information is broader than financial information, and there is no exception for disclosures to "affiliates." *See id.*

   The final "distinctions" drawn by the FTC litigators between FERPA and state ethics rules merit little discussion. Mot. to Dismiss at 22 n.10. FERPA permits review and correction of inaccuracies in education records, requires colleges and universities to keep a record of all parties who request and who obtain access to students' records, and restricts redisclosure by third parties who obtain personal information from education records. None of these requirements bear relevance to the practice of law. It is not clear from the FTC's argument what records lawyers maintain that clients would desire to "correct." Moreover, no purpose would be served by lawyers keeping records of requests for their client's information (assuming there are such requests), or for restrictions on redisclosure by third parties, because the client information could not be released by lawyers in the first instance.

   In sum, the FTC exempted higher education institutions because they are subject to a separate set of laws providing equal, if not greater, privacy protections than the GLBA's privacy provisions. At the same time, the FTC refused to grant an exemption to practicing lawyers, who are subject to state ethics laws providing greater privacy protections than the GLBA and even those afforded to higher education consumers. This decision was arbitrary and capricious and therefore cannot be upheld.

  **D.**  **The FTC Arbitrarily And Capriciously Failed To Take A Hard Look At The Issues Raised By The ABA**

   The FTC suggests that it has unfettered discretion to treat a waiver request as perfunctorily as it pleases. *See* Mot. to Dismiss at 23. However, this view is contrary to precedent in this Circuit. Requests for exceptions and waivers, particularly ones such as the ABA's that are supported by strong policy reasons, "are not subject to perfunctory treatment, but

must be given a 'hard look.'" *WAIT Radio v. FCC*, 418 F.2d 1153, 1157 (D.C. Cir. 1969)

(citation omitted) (refusing to sustain the FCC's denial of a waiver where the agency failed to

give meaningful consideration to a waiver request); *Bellsouth Corp. v. FCC*, 162 F.3d 1215,

1224-25 (D.C. Cir. 1999) (waiver requests "must be given a hard look") (citations omitted).

       The inadequacies of the FTC's April 8, 2002 opinion letter make it plain that the

FTC did not take the required "hard look" at the ABA's exemption request. The FTC invokes

the specter of "'extremely narrow' judicial review" of agency exemption decisions to divert the

Court's attention from these failings. *See* Mot. to Dismiss at 23. But the law does not allow the

FTC's action to escape scrutiny.

       The FTC also characterizes the ABA's case as a challenge to the FTC's "decision

not to engage in rulemaking," which the FTC claims is entitled to "extremely narrow judicial

review." *Id.* Regardless of whether this matter is characterized as a challenge to the agency's

exemption decision or a challenge to its refusal to initiate a rulemaking, the FTC is not relieved

of its obligation to employ reasoned decisionmaking.

       One of the main cases relied on by the FTC, *American Horse Protection Ass'n v.

Lyng*, 812 F.2d 1 (D.C. Cir. 1987), is instructive. In *American Horse*, the D.C. Circuit reviewed

the Secretary of Agriculture's refusal to initiate a rulemaking despite being presented with

evidence that the agency's current rules were not carrying out the statutory mandate.

Significantly, the agency's refusal to initiate a rulemaking was reviewed by the court under the

same standard applied to other types of agency actions, notwithstanding the court's observation

that refusals to initiate rulemakings are "at the high end" on the deference scale. 812 F.2d at 4-5.

The court instructed that "[i]n these, as in more typical reviews, . . . we must consider whether

the agency's decisionmaking was reasoned," and cited cases for the proposition that the "court

must assure itself that the agency considered the relevant factors, that it explained the facts and policy concerns relied on, and that the facts have some basis in the record." *Id.* at 5 (citations and internal quotation marks omitted).

In *American Horse*, as here, the agency proffered only *post hoc* "conclusory sentences" in support of its decision, and there was "no articulation of the factual and policy bases for the decision." *Id.* at 6. Consequently, the court rejected the agency's decision not to initiate a rulemaking and held that it was arbitrary and capricious. It follows that regardless of how the FTC's action is characterized, this Court should do the same here.

In addition, the FTC cites two purported legal justifications for its refusal to grant the requested exemption. These arguments are based on mischaracterizations of three Supreme Court cases and should be disregarded. First, the FTC claims that it denied the request in accord with a supposed "heavy presumption against implicit exemptions from federal laws, particularly those protecting consumers." Mot. to Dismiss at 21 (citing *Jefferson County Pharm. Ass'n v. Abbott Labs.*, 460 U.S. 150, 159 (1983) and *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 787 (1975)). The FTC disingenuously truncates its quotation of *Jefferson County* to make it appear that the case created a presumption against implicit exemptions from federal laws generally. This is not what *Jefferson County* holds. The full quote says that there is a "heavy presumption against implicit exemptions from *the antitrust laws.*" 460 U.S. at 157-58, 103 S. Ct. at 1017 (emphasis added). The holding in *Goldfarb* is the same. 421 U.S. at 787, 95 S. Ct. at 2013. Because the instant case is not an antitrust case, these statements by the Supreme Court do not support the FTC's refusal to grant the ABA's exemption request.

Finally, the FTC claims that its decision was justified because the Supreme Court supposedly held in *Heintz v. Jenkins* that "lawyers should not be exempted implicitly from the

coverage of federal statutes protecting consumers unless subjecting them to the statute would be clearly contrary to the legislative text, purpose, and history." Mot. to Dismiss at 21 (citing 514 U.S. 291, 298 (1995)). Contrary to what the FTC would have this Court believe, *Heintz* did not announce this as a rule of general applicability to lawyers. In *Heintz*, the Supreme Court considered arguments that lawyers should be exempt from the Fair Debt Collection Practices Act even though an express exemption for lawyers in an earlier version of that law had been repealed by Congress. 514 U.S. at 294-98. The Court decided that repeal of an explicit exemption was a strong indication that Congress intended lawyers to be included under the statute, and unless there was an indication to the contrary in the text, purpose or legislative history of the statute, lawyers should be covered. *Id.* at 294-99.

The repeal of an explicit exemption for lawyers by Congress distinguishes the instant case from *Heintz*. There, the Supreme Court found that the repeal expressed Congress's intent that lawyers *were* to be covered by the statute. Here, in sharp contrast, it is clear from the GLBA that Congress intended just the opposite – not to apply the statute to the practice of law.

## CONCLUSION

For the foregoing reasons, the ABA respectfully requests this Court to deny the Motion to Dismiss.

Respectfully submitted,

STEPTOE & JOHNSON LLP

David L. Roll (D.C. Bar No. 188763)
Robert E. Jordan, III (D.C. Bar No. 15784)
Rhonda M. Bolton (D.C. Bar No. 455005)
1330 Connecticut Avenue, NW
Washington, D.C.  20036
(202) 429-3000
(202) 429-3902 (fax)


Darryl L. DePriest
General Counsel
American Bar Association
541 North Fairbanks Court
14th Floor
Chicago, Illinois 60611
(312) 988-5215


*Attorneys for Plaintiff American Bar Association*


January 10, 2003

- 43 -

# EXHIBIT A



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Bureau of Consumer Protection

April 8, 2002

Robert E. Hirshon, President
Robert D. Evans, Director, Governmental Affairs
American Bar Association
740 Fifteenth Street, NW
Washington, DC 20005-1022

Dear Mr. Hirshon and Mr. Evans:

I am writing in response to your correspondence regarding the application of Title V, Subtitle A, of the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq. ("GLB Act") and the Federal Trade Commission's Rule, Privacy of Consumer Financial Information, 16 CFR § 313 ("the Privacy Rule"), to attorneys at law.

Your letters question the appropriateness and utility of applying the GLB Act's privacy provisions to attorneys engaged in the practice of law. Specifically, you request that the Commission exempt attorneys at law from the application of the Privacy Rule.

We have carefully considered your concerns, and recognize the issues you have raised regarding the application of the GLB Act to attorneys at law. However, there are significant questions as to the legal authority of the Commission to grant the exemption you request.

As you know, the GLB Act itself states that entities engaged in "financial activities" are subject to the Act. Although the Commission has express authority under the GLB Act to grant exceptions, that authority is limited to providing exceptions to the requirements of Section 502. The Act does not provide the Commission with express authority to grant exemptions from the other provisions of the GLB Act, including the initial and annual notice provisions. See GLB Act § 504 (b), 15 U.S.C. 6804 (b).

Sincerely,

J. Howard Beales
Director