# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| **AMERICAN BAR ASSOCIATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:02CV01883 (RBW)** |
| | ) | |
| **FEDERAL TRADE COMMISSION** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

In this case, plaintiff the American Bar Association ("ABA") seeks exemption for its members from the consumer privacy protections of the Gramm-Leach-Bliley Act ("GLBA" or "Act"). The ABA and supporting *amici* argue that Congress did not intend to afford consumers such protections when obtaining financial services from lawyers, and that defendant the Federal Trade Commission ("FTC" or "Commission") acted arbitrarily and capriciously by declining to grant lawyers a special administrative exemption from the statute, and because its administrative decision provided an insufficient explanation of its reasons. As the Commission demonstrated in its opening brief,[1] these assertions are without merit, and provide no basis on which relief can be granted.

First, the language of the statute plainly covers lawyers providing certain kinds of services, and provides no exemption for them. Congress broadly defined the key statutory term, "financial institution," by reference to a well-defined range of financial *services*, making clear

---

[1]  Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, filed December 9, 2002 ("FTC Mem.").

that *any* entity that regularly provides such services to individual consumers must adhere to the

Act's basic requirements regarding the privacy of consumers' personally identifiable financial

information.  Many lawyers offer precisely the sort of financial services to which Congress

referred.  *See* FTC Mem. 7-11.  Second, in light of Congress's careful demarcation of the

Commission's express exemption authority, as well as the narrow scope of any further residual

exemption authority, it was reasonable for the Commission to conclude that an administrative

exemption of the entire legal profession would be inappropriate.  *See* FTC Mem. 11-22.  Third,

the Commission's communication of its refusal to exempt attorneys from the GLBA, as detailed

in an April 8, 2002 letter response to the ABA, was reasonable and provided a sufficient

explanation of its reasons.  *See* FTC Mem. 27-30.

In response,[2] the ABA misconstrues the GLBA's language and purposes, as well as the

agency's obligations under the Administrative Procedure Act ("APA").  Contrary to its assertions

(ABA Mem. 10-29), a straightforward reading of the statutory text and the regulatory provisions

it expressly incorporates shows unambiguously that *all* entities that offer specified financial

services to individual consumers are covered by the GLBA's protections.  The application of the

GLBA also furthers the statutory purpose of protecting consumers notwithstanding the broad

protections to client confidences provided by state bar rules.  In fact, the GLBA contemplates that

other protective federal and state laws will continue to apply to protect consumers.  Further, the

ABA has provided no cogent answer to the Commission's demonstration that the GLBA

provides no explicit exemption for attorneys, that the GLBA provision conferring express

---

[2] Memorandum of the American Bar Association in Opposition to the FTC's Motion to Dismiss the Complaint, filed January 10, 2003 ("ABA Mem.").

exemption authority simply does not extend to the sort of categorical exemption that the ABA

seeks, or that the Commission lacks other residual statutory authority to grant the requested

exemption.

Moreover, the April 8, 2002 letter from the Director of the Commission's Bureau of

Consumer Protection ("April 8 letter") responding to the ABA's request for an attorney

exemption complied with the Commission's obligations under the APA. Contrary to the ABA's

assertions (ABA Mem. 33-42), the Bureau Director considered all the relevant factors and his

letter provided sufficient reasons for denying the ABA's exemption request. That letter is

"entitled to respect" as a statement of an agency entrusted by Congress to implement and enforce

the statute. Further, the agency's decision to treat institutions of higher education differently

from lawyers was reasonable.

## ARGUMENT

### I. THE GLBA APPLIES TO LAWYERS SIGNIFICANTLY ENGAGED IN PROVIDING FINANCIAL SERVICES TO INDIVIDUAL CLIENTS

#### A. The Statutory Language Requires that any Entity that Significantly Engages in Financial Activities is Subject to the GLBA

Plaintiff's argument that lawyers are not covered by the GLBA, ABA Mem.10-29, is

wholly at odds with the language of the statute. As shown in the Commission's initial brief,

FTC Mem. 2-3, 7-11, the GLBA contains a very broad definition of "financial institution,"

consisting of entities which engage in "financial activities" as described in a provision of the

Bank Holding Company Act ("BHCA"), and certain regulations incorporated into the BHCA.[3]

---

[3]   The Board of Governors of the Federal Reserve System ("FRB") issued a revised rule
in February 1997, *Bank Holding Companies and Change in Bank Control* ("Regulation Y"), 12
(continued...)

*See* 15 U.S.C. § 6809(3)(A). These regulations list various activities, such as "[p]roviding real estate settlement services," and "[p]roviding tax-planning and tax-preparation services."[4] There is no exception – in the GLBA or in the FRB regulations it incorporates – that exempts attorneys from coverage if they significantly engage in such activities.[5] Thus, the Act plainly covers lawyers that engage in any of the listed activities.

The ABA and *amici*, however, ignore this plain legislative language and argue that, because the words "lawyers" or "attorneys" are not expressly included in the GLBA, the BHCA, or Regulation Y, Congress meant to exclude them from the GLBA. *See, e.g.,* ABA Mem. 3, 10, 12-13; *Amici* Mem. 2.[6] This argument fails, however, because the statute clearly defines its coverage in terms of *activities*, and not the type of professional degrees or designations a person holds.[7] *See* FTC Mem. 10. Even the ABA agrees that the statutory definition of "financial

---

[3](...continued)
C.F.R. pt. 225 (1997) implementing the BHCA and that included activities "so closely related to banking . . ."

[4]  *See* 12 C.F.R. §§ 225.28(b)(2)(viii), (b)(6)(vi).

[5]  The Commission's rule only applies to those entities that are "significantly engaged in financial activities." *See* 16 C.F.R. § 313.3(k)(1).

[6]  Brief of State and Local Bar Associations as *Amici Curiae* in Support of Plaintiff ABA's Memorandum in Opposition to the FTC's Motion to Dismiss the Complaint, filed January 23, 2003 ("*Amici* Mem.")

[7]  Contrary to plaintiff's assertion, ABA Mem. 3-4, the Commission never "suggest[ed]" in its initial brief that the term "lawyers" was specifically listed in the GLBA's definition of "financial institution." Rather, the GLBA (through the cross-referenced BHCA and Regulation Y) clearly defines its coverage by reference to the *activities* in which the institution engages. Both Regulation Y and the GLBA privacy rule specifically refer to activities in which lawyers may engage. *See, e.g.,* 12 C.F.R. §§ 225.28(b)(2)(viii), (b)(6)(vi); *FTC Privacy of Consumer Financial Information*, 65 Fed. Reg. 33646, 33647 n.7 (2000).

4

institution" is not ambiguous and plainly covers "particular service[s]" listed in Regulation Y. ABA Mem. 12, 13.  Thus, the ABA's assertion that "lawyers" – unlike any other institution or entity – should have been specifically listed within the GLBA's definition of "financial institution" misreads the plain language of the Act.

Starting from the unsupported premise that economic regulation affecting lawyers is such an extraordinary thing that it requires an express congressional statement (ABA Mem. 12 n.6), the ABA argues that for Congress to impose obligations on lawyers by means of broad statutory language affecting many types of entities is "hiding elephants in mouseholes." *Id.*  While the metaphor is colorful, it is wholly inapt.  If Congress specifies that a particular provision of law applies to "rodents," it would be pointless to argue that it does not apply to squirrels (or lemmings, or rats, or mice) simply because they are not specifically named.  Likewise, where Congress chooses to extend a statute to "financial institutions," and defines that term by reference to a specified range of activities, it is pointless to argue that any particular type of person who meets the definition – even a lawyer – is exempt because not specifically named. Congress routinely legislates by defining broad categories of persons subject to the law, without naming particular groups.

The cases relied upon by the ABA are easily distinguishable.  For example, in *Whitman v. American Trucking Ass'ns, Inc.,* 531 U.S. 457, 464-471, 121 S. Ct. 903, 907-11 (2001) ("*ATA*"), the Supreme Court held that the Environmental Protection Agency could not consider the costs of implementing a provision of the Clean Air Act ("CAA") that required the agency to set air quality standards "to protect the public health" where the provision lacked any reference to costs. The Court reasoned that consideration of costs was "*both* so indirectly related to public health

*and* so full of potential for canceling the conclusions drawn from direct health effects that it would surely have been expressly mentioned in [the statutory provisions] had Congress meant it to be considered."  531 U.S. at 469, 121 S. Ct. at 910 (emphasis in original).  The ABA cannot point to any analogous way in which applying the GLBA to lawyers would actively undermine the goals Congress sought to further in the GLBA itself.

Plaintiff, like its partner the New York State Bar Association ("NYSBA"), also makes the nonsensical argument that the list of disclosure exceptions in Section 502(e), 15 U.S.C. § 6802(e), somehow evinces a congressional intent to exempt lawyers from the GLBA because they are prohibited from disclosing this information by state bar rules.  ABA Mem. 14-16.  Instead, Section 502(e) merely provides limited exceptions to the disclosure restrictions in Sections 502(a) and (b) for entities that would not otherwise be prohibited from disclosing such information.[8]  The Section 502(e) exemptions do not affirmatively authorize disclosures that are otherwise barred, for example, by state laws preserved under Section 507, 15 U.S.C. § 6807.  None of this creates any anomaly, or provides any justification whatever for taking lawyers out of the GLBA altogether.

---

[8]  Plaintiff also errs in suggesting that none of the disclosures permitted under the GLBA Section 502(e) exceptions would be permitted by the state bar rules, and therefore "Congress did not have lawyers in mind at all when crafting the GLBA."  ABA Mem. 15.  In fact, several Section 502(e) exceptions, omitted from the ABA's purportedly comprehensive list of Section 502(e) exceptions, appear to be similar to exceptions from state bar confidentiality rules under Model Rules of Professional Conduct, Rule 1.6(b)(4), which permits disclosure of client information "to comply with other law or a court order."  *See, e.g.*, Sections 502(e)(3)(B)("to protect against or prevent actual or potential fraud . . ."), 502(e)(5) ("to the extent . . . required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978. . .") and 502(e)(8) ("to comply with Federal, State, or local laws, rules, and other applicable legal requirements . . .").

The ABA also errs in arguing that lawyers are not subject to the GLBA, because "[t]he practice of law is not closely related to banking." *See* ABA Mem. 16-21. The FTC acknowledges that the FRB's Regulation Y lists those nonbanking activities that "are so closely related to banking . . . as to be a proper incident thereto, and may be engaged in by a bank holding company or its subsidiary . . ." 12 C.F.R. § 225.28(a) (1999). However, Regulation Y is concerned with "[c]losely related nonbanking *activities*," *id.* (emphasis added)*,* and lists, for example, "[a]ny *activity* usual in connection with making, acquiring, brokering or servicing loans or other extensions of credit . . ." 12 C.F.R. §§ 225.28(b)(2) (emphasis added). This is true regardless of whether the activity is characterized by the ABA as "financial," "legal" or some other discipline. Would an attorney specializing in real estate closings really dispute, as the ABA asserts (ABA Mem. 19), that his legal service is an "activity usual in connection with making . . . loans," such as "[p]roviding real estate settlement services"? Would a tax attorney really dispute that he performs "[f]inancial and investment advisory activities," such as "[p]roviding tax-planning and tax-preparation services"? The ABA's attempt to create a false dichotomy between "the practice of law" and the activities listed in Regulation Y fails. Indeed, the FRB has even included certain "courier" and "data processing" services to be "permissible nonbanking activities" under Regulation Y. *See* 12 C.F.R. §§ 225.28(b)(10), (14). Why should a bank's document messenger be covered by the rule, but not lawyers performing any of the listed activities?

Similarly, the ABA provides no good reason (*see* ABA Mem. 19) for distinguishing lawyers who perform one of the Regulation Y activities from other professionals (such as non-attorney tax preparers or advisors). One possible distinction that the ABA and *amici* propose,

that other financial institutions "make money in market transactions" and enter into "commercial relationships" with their clients where lawyers somehow do not, *see* ABA Mem. 19-20; *Amici* Mem. 9, has long been rejected by courts. The Supreme Court has held "the activities of lawyers play an important part in commercial intercourse . . ." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 788, 95 S. Ct. 2004, 2014 (1975). In fact, *Goldfarb* specifically held that an attorney's "examination of a land title" – one component of providing real estate settlement services – "is a service; the exchange of such a service for money is 'commerce' . . . It is no disparagement of the practice of law as a profession to acknowledge that it has this business aspect . . ." 421 U.S. at 787-88, 95 S. Ct. at 2013. Further, contrary to the ABA's and *amici's* contentions (ABA Mem. 20; *Amici* Mem. 9), other types of financial institutions also have "proactive responsibilities" towards protecting their customers' confidentiality.[9] Thus, applying the GLBA privacy provisions to attorneys is just as appropriate as it is for other "financial institutions."

The Supreme Court also has flatly rejected the ABA's notion that "[t]he practice of law is an activity that is much different from the financial activities" listed in Regulation Y. ABA Mem. 20-21. In analyzing a closely analogous statutory provision, the Supreme Court held that lawyers who regularly engage in consumer debt-collection litigation on behalf of creditor clients

---

[9] In fact, the banking industry imposes a duty of confidentiality over customer information, including protections against unauthorized access to customer data. Letter from John J. Byrne, American Bankers Association, to the FRB, Office of the Comptroller of the Currency, Federal Deposit Insurance Corp., and Office of Thrift Supervision, *Comment Letter on Proposed Guidelines Establishing Standards for Safeguarding Customer Information* 1, 5 n.4 (August 23, 2000) <http://www.aba.com/Industry+Issues/Guidelinescmtltr00.htm>. The banking industry also instituted a broad set of privacy principles that, *inter alia*, recognizes a customer's expectation of privacy, restricts the use and disclosure of customer information as well as access to such information, and imposes security standards on financial institutions. *See* American Bankers Association, *Privacy Principles* (visited Jan. 30, 2003) <www.aba.com/about+aba/aba_privprincpublic.htm>.

– and thus are "practicing law" – are "debt collector[s]" for purposes of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o ("FDCPA"). *Heintz v. Jenkins*, 514 U.S. 291, 115 S. Ct. 1489 (1995). The FRB's Regulation Y lists "[c]ollecting overdue accounts receivable, either retail or commercial," as an activity "closely related to banking . . ." 12 C.F.R. § 225.28(b)(2)(iv). Indeed, *Heintz* rejected the argument – supported by the statement of a sponsor of the legislation – that somehow "the practice of law" or "legal activities" are necessarily distinct from the financial activities of which they are a part. 514 U.S. at 297-98, 115 S. Ct. at 1492. The Court specifically rejected the argument that there was a magical line "between 'legal' activities and 'debt collection' activities . . . for litigation, at first blush, seems simply one way of collecting a debt." 514 U.S. at 297, 115 S. Ct. at 1492. In sum, the ABA utterly fails in its attempt to place "the practice of law" on a pedestal wholly separate from the financial activity of which it is a part.

Finally, contrary to the ABA's assertions (ABA Mem. 18-19), no statements by the FRB during the Regulation Y rulemaking or in the Bank Holding Company Supervision Manual show that the "the practice of law" was to be excluded from the list of "permissible nonbanking activities" in that rule. As did the NYSBA, plaintiff completely misreads the preamble to an earlier version of Regulation Y, *Bank Holding Companies and Change in Bank Control; Expanded List of Permissible Nonbanking Activities*, 12 C.F.R. pt. 225 (1986), which permitted a bank holding company to engage in tax planning services. In the Supplementary Information section to the rule, the FRB addressed concerns about whether engaging in those services might nonetheless "give rise to legal liability for . . . the *unauthorized* practice of law." 51 Fed. Reg. 39994, 39998 (Nov. 4, 1986) (emphasis added). The FRB explained that, "[w]ith respect to the

*unauthorized* practice of law, the Board notes that the activity must be conducted in strict accordance with applicable local law, and that the activity would therefore be prohibited in those jurisdictions that specify the activity as the practice of law." *Id.* (emphasis added). Thus, the FRB's commentary merely prohibited a bank holding company from engaging in tax preparation services that constituted the practice of law in a particular jurisdiction *unless the entity was authorized to practice law in that jurisdiction*. Regulation Y does not prohibit a lawyer engaged in the practice of law from participating in one of the listed permissible nonbanking activities if the lawyer is authorized to practice law in the jurisdiction. In other words, Regulation Y authorizes a list of permissible nonbanking activities for bank holding companies or its subsidiaries and is unconcerned about whether those particular activities might also be considered to be "the practice of law" if the institution is properly authorized under local law.

### B. Subjecting Lawyers to the GLBA Furthers the Statutory Purpose and is Consistent with the Legislative History

Having no statutory language to support its argument, the ABA next appeals to its own characterization of the GLBA's statutory purpose and legislative history. ABA Mem. 21-28. As with its textual analysis, however, the ABA creates a false dichotomy where "lawyers" cannot be "financial institutions," and visa versa, for purposes of the GLBA. In fact, subjecting those lawyers who engage in "financial activities" to the GLBA is not only mandated by the statutory language, but furthers the explicit purpose of the Act that imposes on every financial institution "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

10

While the Commission acknowledges that state bar rules provide broad protections to client confidences, there are instances where the GLBA protects consumers in situations that are unaddressed in state law. *See* FTC Mem. 17-19. For example, neither the ABA nor *amici* contest that many state bar rules fail to require the sorts of detailed privacy notices mandated by the GLBA. *See* ABA Mem. 23-25; *Amici* Mem. 10-11. The ABA completely misunderstands the text and purposes of the GLBA when it asserts that sending privacy notices is not one of "the goals of GLBA." ABA Mem. 24. The Section 503 notice provision is one of the key statutory cornerstones of the GLBA privacy protections that requires comprehensive and regular notices to be sent to *all* customers of financial institutions – even if the institution does not share the customers' financial information. Most importantly, the Section 503 notice is the means by which *Congress* chose to effectuate its goal of protecting consumer privacy, and the Commission cannot implement its own approach in place of the path chosen by Congress. *See* FTC Mem. 12-14 and n.7.

Similarly, neither the ABA nor *amici* contest that the GLBA and the Commission's implementing rule impose obligations for safeguarding the security and confidentiality of customer information – such as technical and administrative barriers to prevent the unauthorized access to client files – that may be missing in state bar rules. *See* 15 U.S.C. § 6801(b); *Standards for Safeguarding Customer Information*, 16 C.F.R. pt. 314 (2002).[10]

Further, there may be instances where state bar rules provide less protection than the GLBA for certain forms of consumer information, such as a list of client names or the fact of

---

[10]  All financial institutions subject to the FTC's jurisdiction – including lawyers – will have to comply with these rules beginning on May 23, 2003. *See* 16 C.F.R. § 314.5(a).

attorney representation.  *See* FTC Mem. 18-19.  The ABA and *amici* wrongfully assert that the

Commission confused the attorney-client privilege and the attorneys' duty of confidentiality.  *See*

ABA Mem. 25 n.11; *Amici* Mem. 11-12.  They also provide no support for their proposition that

"client identity" and "the fact of representation" are protected by all state bar confidentiality

rules.  *See id.*  Indeed, the ABA itself has acknowledged that only in "some circumstances" does

Rule 1.6 protect a client's identity.  *See Annotated Model Rules of Professional Conduct* Rule 1.6

legal backgr. 83 (4th ed. 1999).  For example, in *Crews v. Wahl*, 520 S.E.2d 727 (Ga. Ct. App.

1999), the court, relying on decisions permitting the disclosure of the identities of attorneys'

clients, held that "the identity of an accountant's clients is not confidential" and could be sold to

another firm.  520 S.E.2d at 732.  Presumably the same conclusion would be applied to lawyers

in Georgia.  Moreover, neither the ABA nor *amici* describe the scope of information protected in

those states whose confidentiality rules are not patterned after Model Rule 1.6, and that may

protect a narrower scope of client information than Rule 1.6.  *See, e.g.*, Alaska R. Prof. Cond.

1.6.  In contrast, client identity and lists of clients are undoubtedly protected under the

Commission's privacy rule.  *See* 16 C.F.R. §§ 313.3(n)(1)(ii), (o)(2)(i)(C).  Most importantly,

regardless of the differences between information protected under state bar rules and the GLBA,

plaintiff does not allege any inconsistency between the GLBA and state bar rules, both of which

apply to lawyers.

The ABA's complaint that the GLBA privacy notice will "confuse" clients, ABA Mem.

25, is simply a red herring, because attorneys are perfectly capable of drafting privacy notices

that clearly lay out their privacy obligations in a manner that is consistent with both their GLBA

and state confidentiality obligations.  *See* FTC Mem. 19-20.[11]  Similarly, the regulatory "impact"

on attorneys by the GLBA is irrelevant.  *Amici* Mem. 3-4.[12]  If the ABA or *amici* believe that

client "confusion" or the law's "impact" on attorneys is particularly detrimental or widespread,

the proper course is to ask Congress to amend the GLBA, not to petition the Commission or this

Court for an exemption.

Further, the two vague snippets of the legislative record referred to by plaintiff, ABA

Mem. 26-28, do not undermine the clear statutory text or somehow create an implied exemption

for attorneys.  Although lawyers were not the main focus of the legislation, Congress provided no

exception for them.  The cited legislative snippets merely acknowledge the undisputed point that

attorneys (like doctors or religious advisors) have been historically subjected to local or self-

regulating codes of confidentiality.  That this is true, however, does not mean that lawyers are

therefore free from other federal regulatory regimes that impose additional privacy protections

for consumers.

---

[11] Nor does the issue of client "confusion" raise a factual issue to defeat the Commission's motion to dismiss.  *See* ABA Mem. 9, 25.  In an action under the Administrative Procedure Act, such as this one, any evidence concerning client "confusion" must be limited to the administrative record, consisting of factual submissions to the Commission in connection with the ABA's petition for an attorney exemption.  *See Citizens to Protect Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S. Ct. 814, 825 (1971) (review by district court must be based on full administrative record before the agency).  Neither the ABA nor any other bar association submitted evidence of client "confusion" to the agency.  Accordingly, the agency did not act improperly by not considering such evidence.  Rather, the ABA treated this as a policy-based legal argument.

[12] *Amici's* attempt to sway the Court with protests about the impact of the GLBA on "public interest attorneys," is unsupported.  *See Amici* Mem. 3-4.  Neither plaintiff nor *amici* attempt to quantify the relatively small percentage of attorneys who arguably engage in GLBA-related activities, let alone the even fewer number who perform such services for "the indigent."

In fact, the ABA's argument that Congress did not intend to impose a federal regulatory regime over lawyers through the GLBA, because lawyers are also regulated under state bar rules, *see, e.g.,* ABA Mem. 11, 32-33, is further refuted by the numerous federal statutes to which lawyers are currently subject notwithstanding their concurrent regulation by the states.[13]  Indeed, individuals providing real estate settlement services, lawyers or non-lawyers, are already subject to the disclosure and procedural requirements imposed by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.  See, e.g.,* 12 U.S.C. § 2602(3) (attorneys are subject to the statute).

Furthermore, recent federal legislation goes so far as to subject lawyers to federal "professional conduct" standards when appearing and practicing before an administrative agency, the Securities and Exchange Commission.  *See* 15 U.S.C. § 7245 (Section 307 of the Sarbanes-Oxley Act of 2002).  This provision, and its implementing rule, broadly regulates confidential information obtained by any attorney representing a public company and goes beyond obligations imposed by state law.  *See id; SEC Implementation of Standards of Professional Conduct for Attorneys*, 68 Fed. Reg. 6296 (2003) (to be codified at 17 C.F.R. pt. 205); Otis Bilodeau, *SEC Signals Lawyers Still in Crosshairs*, Washington Legal Times, January 27, 2003, at 1.  In

---

[13]  *See, e.g.*, *Heintz v. Jenkins*, *supra* (lawyers subject to the Fair Debt Collection Practices Act); *Wyatt v. Cole*, 504 U.S. 158, 112 S. Ct. 1827 (1992) (federal civil rights law); *FTC v. Superior Court Trial Lawyers Ass'n,* 493 U.S. 411, 110 S. Ct. 768 (1990) (Sherman Antitrust Act); *Hishon v. King & Spalding*, 467 U.S. 69, 104 S. Ct. 2229 (1984) (federal antidiscrimination law); *Goldfarb v. Virginia State Bar, supra* (Sherman Act); *Duncan v. Handmaker*, 149 F.3d 424 (6th Cir. 1998) (Fair Credit Reporting Act); *Crowe v. Henry*, 43 F.3d 198 (5th Cir. 1995) (Racketeer Influenced and Corrupt Organizations Act); *Kline v. First Western Government Securities, Inc.*, 24 F.3d 480 (3d Cir. 1994) (federal securities laws); *Jenkins v. Landmark Mortgage Corp. of Virginia*, 696 F. Supp. 1089 (W.D. Va. 1988) (Truth in Lending Act); *Foley, Hoag & Eliot*, 229 NLRB 456 (1977) (federal collective bargaining law). *See generally* Restatement (Third) of the Law Governing Lawyers § 56 (2000).

contrast, the GLBA and the Commission's privacy rule impose modest obligations, such as the notice requirement, on a relatively small number of attorneys.

*Amici's* assertion that the GLBA cannot apply to lawyers because its opt-out scheme would prohibit a lawyer from disclosing false evidence or documentation by his client in violation of his state ethical duties, or from disclosing certain information necessary in a class action suit, *see Amici* Mem. 13-15, is just plain wrong. Section 502(e)(8), 15 U.S.C. § 6802(e)(8), permits the disclosure of nonpublic personal information, *inter alia,* "to comply with Federal, State, or local laws, rules, and other applicable legal requirements . . ." Each of the examples cited by *amici* as purported "conflicts" with state law are no such thing, because the GLBA permits disclosures that are required to be made under state bar rules or class action requirements. In fact, neither the ABA nor *amici* can point to anything in the GLBA that requires disclosures prohibited by state law or that prohibits disclosures that are required by state law.

The Commission does not quarrel with the notion that state bar rules provide broad protections over client confidences in many respects, including in situations not covered by the GLBA such as legal advice given for business (as opposed to personal) matters. Congress expressly intended to preserve those state laws (including state bar rules) that are consistent with the GLBA's privacy provisions, including those state provisions that provide greater privacy protection, *in addition to* the protections afforded by the GLBA. 15 U.S.C. § 6807.[14] The

_____

[14] Section 507(a), 15 U.S.C. § 6807(a), preserves from federal preemption state laws that are consistent with the GLBA privacy provisions, while Section 507(b), 15 U.S.C. § 6807(b), further provides that state laws that provide greater privacy protection than the GLBA are "not inconsistent" with the federal law. This provision plainly evinces a congressional policy of affording consumers the greatest privacy protection, as provided either by the GLBA itself or by state law. However, state laws that are inconsistent with the GLBA will be preempted by the

(continued...)

important point, however, is not whether the state bar rules or the GLBA provide greater privacy protection to consumers for particular types of personal information. Rather, the above examples merely show that there are indeed instances where the GLBA protects consumer information in areas that are unaddressed by state law, and that the GLBA thus complements those state laws that provide greater privacy protections. There can therefore be no question that the GLBA applies – in accordance with its plain terms – to lawyers who significantly engage in "financial activities" on behalf of individual consumers.

## II.    THE COMMISSION LACKED STATUTORY AUTHORITY TO EXEMPT ATTORNEYS FROM THE GLBA

While the ABA's petition to the Commission sought an attorney exemption, their opposition brief fails to identify the purported source of the Commission's authority to grant such an exemption. As shown previously (FTC Mem. 11-22), there is no express exemption for lawyers in the GLBA, the GLBA's limited express exception authority does not extend to granting an exemption for lawyers from all of the Act's privacy provisions, and the Commission lacks any other residual statutory authority to grant a categorical exemption to lawyers.

The ABA ignores, in its purported analysis of the statutory text, the very limited express exemption authority given to the administering agencies in the GLBA privacy provisions. GLBA

---

[14](...continued)
GLBA both by its own terms and by virtue of the constitutional Supremacy Clause. Thus, *amici's* assertion that state bar rules are "inconsistent" with the GLBA, and that it might be "impossible" for attorneys to comply with both sets of regulations, *Amici* Mem. 13 n.4, if true, would result in federal preemption of the state bar rules. Even the Commission does not go that far, arguing instead that, since neither statutory scheme requires disclosures that are prohibited by the other, attorneys must comply with both the GLBA and applicable state bar rules. *See Northwest Central Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 514-18, 109 S. Ct.1262, 1276-79 (1989); *Florida Lime & Avocado Growers Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217-18 (1963).

Section 504(b), 15 U.S.C. § 6804(b), grants authority to the agencies to provide "such additional exceptions to subsections (a) through (d) of Section 502 as are deemed consistent with the purposes of this subtitle," thus permitting the agencies to expand on the exceptions listed in Section 502(e) permitting disclosures without notice and opt-out to nonaffiliated third parties in certain circumstances. Thus, the Section 504(b) exemption authority is limited to exceptions to the GLBA's information *disclosure* restrictions. However, the Section 504(b) exemption authority does not provide authority to the agencies to grant exceptions to other provisions in Title V, such as the Section 503 *notice* requirement. Section 503 imposes the independent requirement that financial institutions send privacy notices to consumers who establish a "customer relationship" with the institution whether or not the institution intends to share customer information to certain third parties, and also details the content and timing of those notices. Although Section 502 refers to Section 503 and the two provisions are complementary, they impose separate obligations. Thus, Section 503 cannot simply be subsumed within Section 502 and come within the ambit of the Commission's carefully delineated Section 504(b) exemption authority.

Indeed, the ABA does not even attempt to argue that attorneys fall within the Section 504(b) exemption authority. As shown previously, FTC Mem. 12-14, the implementing agency generally may not expand on limited express statutory exemption authority, even if it believes such an exemption would be good policy, because it cannot substitute its approach for that of Congress. Further, the ABA does not effectively rebut the Commission's conclusion that it lacked *de minimis* or other residual authority under its general rulemaking powers, 15 U.S.C. § 6804(a)(1), to exempt attorneys from all of the GLBA privacy requirements. *See* FTC Mem. 14-

17.  Because the Commission lacked any statutory authority to provide a categorical exemption to lawyers from the GLBA privacy requirements, it properly rejected the ABA's request.

This conclusion is reinforced by the Supreme Court's decision in *Heintz*, which refused to imply an exemption for lawyers engaging in the "practice of law" from the Fair Debt Collection Practices Act where such lawyers fell within the plain statutory definition of "debt collector" and there was no applicable exception.  *See* 514 U.S. at 294, 115 S. Ct at 1490-91; *see also* 514 U.S. at 298, 115 S. Ct. at 1492-93 (concluding that lawyers were subject to the statute where "nothing either in the Act or elsewhere indicat[es] that Congress intended to authorize the FTC to create this exception from the Act's coverage – an exception that . . . falls outside the range of reasonable interpretations of the Act's express language.").  The ABA is correct, ABA Mem. 42, that *Heintz* considered the legislative history of the FDCPA where Congress had repealed an explicit exemption for attorneys without creating a narrower litigation-related exemption.  However, that discussion simply reinforced the Court's reading of the statute's plain language, because "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings" falls within the plain definition of a "debt collector" under the statute.  514 U.S. at 294, 115 S. Ct. at 1491; *see also* 514 U.S. at 297, 115 S. Ct. at 1492 ("the plain language of the Act itself says nothing about retaining the exemption in respect to litigation.").  The holding in *Heintz* that lawyers are subject to a federal statute when they fall squarely within the statutory terms, and that no exemption should be implied, is directly applicable to our case.[15]

_____

[15]  Similarly, plaintiff fails to distinguish (ABA Mem. 41), *Jefferson County Pharm. Assoc., Inc., v. Abbott Lab.,* 460 U.S. 150, 157-58, 103 S. Ct. 1011, 1017 (1983) and *Goldfarb,* 421 U.S. at 787, 95 S. Ct. at 2013, which hold that there is a "heavy presumption against implicit exceptions" in statutes, such as the Robinson-Patman Act and the Sherman Act, that protect

(continued...)

Finally, because the GLBA is a remedial statute it must be construed expansively to further its remedial purposes and any statutory exceptions must be interpreted narrowly. *See Jefferson County,* 460 U.S. at 159, 103 S. Ct. at 1018. For all of these reasons, the ABA's request that the Commission (or this Court) create an implied exemption for lawyers must be denied.

## III. THE APRIL 8, 2002 LETTER DENYING THE ABA'S PETITION FOR AN ATTORNEY EXEMPTION FULLY COMPLIED WITH THE COMMISSION'S OBLIGATIONS UNDER THE ADMINISTRATIVE PROCEDURE ACT

Having no support in the statutory language or purpose to rebut the Commission's conclusion that certain attorneys are subject to the GLBA, the ABA resorts to attacking the document that provided that message: the April 8, 2002 letter from the Commission's Director of the Bureau of Consumer Protection ("Director") denying the ABA's request for an attorney exemption. In so doing, plaintiff does not dispute the "extremely narrow" scope of judicial review given to an agency's refusal to issue or modify a rule, or to grant exceptions or waivers to a rule. *Marshall County Health Care Authority v. Shalala,* 988 F.2d 1221, 1224-25, 1227 (D.C. Cir. 1993); *American Horse Protection Ass'n, Inc. v. Lyng,* 812 F.2d 1, 4-5 (D.C. Cir. 1987); *WWHT, Inc. v. FCC,* 656 F.2d 807, 809, 815-818 (D.C. Cir. 1981). "It is only in the rarest and most compelling of circumstances that this court has acted to overturn an agency judgment not to institute rulemaking." *WWHT*, 656 F.2d at 818. While brief, the April 8 letter fully complied with the Commission's obligations under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*

---

[15](...continued)
consumers. Like those antitrust statutes, the GLBA's coverage is extensive, there is no applicable exception for lawyers, and its purpose is to protect consumers. *See id.; Trans Union, LLC v. FTC*, 295 F.3d 42, 46-47 (D.C. Cir. 2002); FTC Mem. 21.

**A. The Bureau Director Considered All Relevant Factors and his April 8, 2002 Letter Sufficiently Explained His Reasons for Denying the ABA's Exemption Request**

Plaintiff asserts variously that the April 8 letter is arbitrary and capricious because it lacked any explanation that lawyers are subject to the GLBA, failed to consider the agency's residual or inherent *de minimis* exemption authority, and failed to explain adequately its refusal to exempt lawyers from the GLBA. ABA Mem. 33-35. These arguments are without merit. An agency's decision must be upheld under the 5 U.S.C. § 706(2)(A) "arbitrary and capricious" standard "if the agency's path may reasonably be discerned," while "consider[ing] whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866-67 (1983) (citation omitted). Further, the agency's rejection of the ABA's request for an attorney exemption only required "a brief statement of the grounds for denial." 5 U.S.C. § 555(e) (2003). *See also* FTC Mem. 23-24.

The April 8 letter provided a sufficient explanation of its reasons to satisfy the agency's obligations under the APA. The letter on its face reflects that the agency "carefully considered" the issues raised by the ABA concerning the application of the GLBA to attorneys. *See* Exhibit A to ABA Mem. In particular, the letter shows that the Director considered and resolved the two critical issues raised by the ABA's petition: the scope of coverage of the Act's privacy provisions, and the scope of the agency's exemption authority. The Director noted "that entities engaged in 'financial activities' are subject to the Act," *id.*, reflecting the conclusion that anyone (including attorneys) who engages in those activities falls within the Act's broad definition of "financial institution." The Director also recognized the "significant questions as to the legal authority of

20

the Commission to grant the [attorney] exemption . . ." *Id.* The Director then stated correctly that the Commission's express exception authority under Section 504(b) "is limited to providing exceptions to the requirements of Section 502," and does not encompass "exemptions from the other provisions of the GLB Act, including the [Section 503] initial and annual notice provisions." *Id.* Although the Director did not explicitly discuss whether the Commission had other residual exemption authority, such as under its inherent *de minimis* powers, his failure to grant the requested exemption necessarily reflected his conclusion that it would be inappropriate to administratively grant the type of broad relief sought by the ABA under any existing exemption authority.

While perhaps "a decision of less than ideal clarity," *State Farm,* 463 U.S. at 43, 103 S. Ct. at 2867, the April 8 letter must be upheld because it reasonably reflects the "agency's path" in considering and resolving the most relevant issues: whether lawyers fall within the statute's terms and whether the agency can nonetheless grant a regulatory exemption. Unlike the agency in *State Farm* which provided "no reasons at all," 463 U.S. at 50, 103 S. Ct. at 2870, the explanation contained in the Director's April 8 letter is sufficient and, at the very least, does not constitute "a clear error of judgment." Similarly, while 5 U.S.C. § 555(e) is violated where an agency provides "no explanation for its decision" in denying a request for administrative action, the April 8 letter satisfied this requirement because it provided "at least some statement of reasons" for rejecting the ABA's petition. *See Roelofs v. Sec'y of Air Force,* 628 F.2d 594, 596, 600-01 (D.C. Cir. 1980).[16] The cases cited by plaintiff are easily distinguishable.[17]

---

[16] Plaintiff also errs in asserting that the FTC's "litigation team" is somehow creating an *post hoc* explanation of the agency's position. *See* ABA Mem. 5, 34. Rather, the agency's

(continued...)

**B.  The Commission's Distinction Between Institutions of Higher Education and Lawyers was Reasonable**

The ABA also errs in asserting, ABA Mem. 35-39, that the agency's failure to exempt lawyers from the GLBA was arbitrary and capricious because the Commission had previously "deemed" institutions of higher education "to be in compliance with" the GLBA privacy provisions if the institutions were in compliance with the federal Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and its implementing regulations.  *See* 16 C.F.R. § 313.1(b).  The Commission has already provided several reasons why subjecting to the GLBA universities that comply with FERPA provides little or no public benefit and therefore falls within the Commission's inherent *de minimis* authority, whereas the same could not be said for attorneys. *See* FTC Mem. 22 n.10.  The ABA fails to show that these distinctions between FERPA and state bar rules are unreasonable.

---

[16](...continued) arguments made in its litigation papers are entirely consistent with the "bas[e]s articulated by the agency itself," *State Farm*, 463 U.S. at 50, 103 S. Ct. at 2870, and simply respond to the specific arguments and allegations contained in plaintiff's complaint and legal memoranda.

[17]  For example, the court in *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404-05 (D.C. Cir. 1995), held that the agency's letters denying certain administrative relief used "conclusory" "boilerplate language," and did not indicate whether the agency "even considered" an important argument.  In *American Horse,* the court concluded that the agency arbitrarily denied a request to initiate a rulemaking when it ignored the results of a major medical study it commissioned that might have constituted a significant change in the factual premises underlying earlier rules, issued a denial which did not articulate any of the relevant issues, and completely ignored the plain language of the statute which was unambiguously designed to end certain practices in the show horse industry.  812 F.2d at 1-3, 5-7.   In contrast, here none of the bar associations presented empirical evidence supporting their requests for an exemption, and the Commission followed the plain language of the statute and issued a decision which raised and resolved the significant issues.

22

The ABA dismisses the essential role of the privacy notices in the GLBA statutory regime, as well as the Commission's lack of statutory authority to grant exceptions from the Section 503 notice provision, by claiming that the dissemination of privacy notices was not one of the purposes of the Act.  ABA Mem. 37.  As shown *supra* at 11, 17, the Section 503 notice provision is a key element of the GLBA privacy provisions that requires that notices be sent to *all* customers of financial institutions – even if the institutions do not share the customers' financial information.  Congress itself chose the notice requirement as an important means of furthering the Act's privacy goals, independent of the disclosure restrictions on customer information imposed by Section 502.  The Commission already has shown why the dissemination of privacy notices by lawyers furthers the statutory purposes, particularly where very few states require lawyers to send any type of privacy notices to their clients.  *See* FTC Mem. 17-18.  In contrast, FERPA requires annual notices informing parents or eligible students of their rights under that act and procedures to enforce those rights.  *See* 20 U.S.C. § 1232g(e); 34 C.F.R. § 99.7 (2002).  This important difference places the protections of FERPA much closer to those of the GLBA itself, and justifies the Commission's differing treatment of FERPA on the one hand, and the variety of state bar rules on the other.

Moreover, the acknowledged variation in state bar rules regarding client privacy makes it more difficult for the Commission to conclude – as it could in the case of FERPA, a federal privacy statute specifically protecting educational records – that compliance with the GLBA would yield only insubstantial added protections.  *See also* 65 Fed. Reg. at 33648.  Recognizing this fact shows no "disdain" for the prerogatives of state bars (ABA Mem. 38), but simply respect for Congress's directive that *all* consumers should enjoy a certain level of privacy protection.

23

Finally, the ABA does not contest that state bar rules may lack provisions allowing clients to inspect and, if necessary, correct inaccurate information in their lawyers' files as does FERPA.[18] These examples show that the Commission's decision to treat universities differently from lawyers was reasonable.

### C. If the April 6 Letter is Deemed Arbitrary and Capricious, the Proper Remedy is to Remand to the Commission

If this Court concludes that the agency provided an insufficient explanation in its April 8 letter denying the ABA's petition for an attorney exemption, or that the administrative record or agency decision is otherwise inadequate, the proper course is to remand this case to the Commission for a more complete explanation. The Court should not grant the ABA its requested relief on the merits of its claims or direct the Commission to grant the requested exemption. *See, e.g., Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 1607 (1985) (proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation if the administrative record is inadequate, if the agency has not considered all relevant factors, or if the explanation is insufficient); *Tourus Records, Inc. v. Drug*

---

[18]  The ABA also incorrectly suggests that FERPA provides less protection than state bar rules, because law enforcement agencies may gain "routine" access to foreign students' educational records pursuant to federal law. *See* ABA Mem. 38 n.17.  In fact, FERPA requires a law enforcement agency to obtain a court order before demanding the nonconsensual disclosure of a student's education records by an educational institution. *See* 20 U.S.C. § 1232g(j)(1) (2003).  Model Rule 1.6(b)(4) also permits (as the ABA acknowledges) disclosures for client confidences in order "to comply with other law or a court order."  Moreover, the article cited by the ABA, as well as other sources, show that universities are using the strong privacy protections in FERPA as a shield to protect against over intrusive information requests by law enforcement, and that such requests are not to be considered "routine."  *See, e.g.*, Dan Eggen, *FBI Seeks Data on Foreign Students: Colleges Call Request Illegal*, Washington Post, Dec. 25, 2002, at A1; *U. of A. Vows to Protect Student Privacy During FBI Inquiries,* Associated Press (Jan. 6, 2003) <www.thehometownchannel.com/news/1870985/detail.html>.

*Enforcement Admin.*, 259 F.3d 731, 737-38 (D.C. Cir. 2001) ("When an agency provides a statement of reasons insufficient to permit a court to discern its rationale, or states no reasons at all, the usual remedy is a 'remand to the agency for additional investigation or explanation.'") (*citing Florida Power, supra*); *American Horse*, 812 F.2d at 7-8 (remanding to agency for "a reasonable opportunity to explain [its] decision or to institute a new rulemaking proceeding . . .").

## IV.  THE AGENCY'S APRIL 8, 2002 LETTER DESERVES DEFERENCE

As shown in Part I *supra*, the GLBA unambiguously requires that anyone (including attorneys) significantly engaging in the statutorily-defined "financial activities" is subject to the Act.  Nonetheless, if the Court deems the statutory provision ambiguous, this Court should defer to the Bureau Director's construction of the GLBA and the agency's exemption authority reflected in the April 8 letter, which reflects the informed decision of the agency entrusted to administer the statute.

The ABA errs by asserting that the April 8 letter deserves no deference.  ABA Mem. 8, 29-32.  Even if the Bureau Director's April 8 letter interpreting the GLBA's exemption authority is undeserving of the full deference to agency decisionmaking afforded under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984), this Court should still look "for guidance" to the April 8 letter which is "entitled to respect" under the standards articulated in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164 (1944).  So-called "*Skidmore* deference" is appropriate for less formal agency interpretations, such as those contained in opinion letters, policy statements, agency manuals, and enforcement guidelines, that are not the result of formal adjudication or notice-and-comment rulemaking.  *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1662-63 (2000).

25

*Skidmore* counsels "that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *United States v. Mead Corp.,* 533 U.S. 218, 234, 121 S. Ct. 2164, 2175 (2001) (*citing Skidmore,* 323 U.S. at 139, 140, 65 S. Ct. at 163). Indeed, deference is particularly appropriate where, as here, the Commission is cautiously construing its statutory exemption authority, because where an agency "disclaims rather than asserts a power, there is all the more reason to feel assured of its disinterestedness and to resolve ambiguity in favor of its choice of construction." *National Wildlife Federation v. ICC,* 850 F.2d 694, 699 n.6 (D.C. Cir. 1988) (affording *Chevron* deference to agency rules) (citation omitted).

As shown above, the Bureau Director considered and resolved the critical issues raised by the ABA's petition, and validly concluded that in the absence of statutory authority the requested exemption was inappropriate. Moreover, the April 8 letter was entirely consistent with the agency's earlier treatment of institutions of higher education that comply with FERPA, as well as with the agency's limited *de minimis* or other residual exemption authority. Further, the Commission has gained specialized and valuable experience interpreting and implementing the GLBA privacy provisions, including enforcement against law violators. Indeed, this Court has already held that "the subject matter of the [GLBA] falls squarely within the [Commission's] areas of expertise . . ." *Individual Reference Services Group, Inc. v. FTC,* 145 F. Supp. 2d 6, 24 (D.D.C. 2001), *aff'd sub nom. Trans Union LLC v. FTC,* 295 F.3d 42 (D.C. Cir. 2002). The Commission also has long had experience interpreting and implementing provisions in other federal privacy laws. *See, e.g., Trans Union Corp. v. FTC,* 245 F.3d 809 (D.C. Cir. 2001)

(upholding agency's interpretation of the Fair Credit Reporting Act).  Clearly, the informed

judgment of the Commission reflected in the April 8 letter deserves respect.

.                                      **CONCLUSION**

The Commission followed the plain language in the GLBA that any entity – including

lawyers – that engages in the statutorily-defined "financial activities" is subject to the GLBA, and

reasonably concluded that it lacked any statutory authority to exempt lawyers.  At bottom, the

ABA's and supporting *amici's* complaint is that there is no reason to impose the GLBA on

attorneys given the broad protections governing client confidences under state bar rules.

However, the scope of coverage of federal legislation is fundamentally a policy choice made by

Congress.  If the ABA or any other bar association believes that lawyers should not be subject to

the GLBA, the proper recourse is to ask Congress to amend the statute.

For the foregoing reasons, as well as those provided in its memorandum supporting its motion to dismiss, the Commission respectfully requests that this action be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,


_____/s/_____
ROSCOE C. HOWARD, JR.
D.C. Bar No. 246470
United States Attorney


_____/s/_____
MARK E. NAGLE
D.C. Bar No. 416364
Assistant United States Attorney


_____/s/_____
BRIAN J. SONFIELD
D.C. Bar No. 449098
Assistant United States Attorney
Judiciary Center Bldg., Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7143

JOHN F. DALY
D.C. Bar No. 250217
Deputy General Counsel for Litigation

MICHAEL D. BERGMAN
D.C. Bar. 437994
Attorney
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C.  20580
(202) 326-3184
Fax: (202) 326-2477

February 25, 2003